LEONARD CLARK vs. BOARD OF EXAMINERS OF HAMPDEN
COUNTY.

Hampden.    January 14; February 14. — 27, 1879.

The duties of a board of examiners of election returns, under the Gen. Sts c. 7,
§ 25, are purely ministerial, and the board cannot receive or consider evidence
of extrinsic circumstances, but is confined to the records of votes returned and
laid before it; and mandamus will not lie to compel the board to count certain
votes, containing the initial letter only of the Christian name of a candidate, with
other votes containing his name in full.

PETITION for a writ of mandamus to compel the respondents
to count for the petitioner certain ballots for county commissioner
purporting to be for " L. Clark of Springfield," and to notify him
of his election.  At the hearing before *Colt*, J., the case appeared
to be as follows:

On November 5, 1878, an election was had for the office of
county commissioner for the term of three years from January 1,
1879; and copies of the records of the votes received in the sev-
eral cities and towns of the county were returned to the clerk of
the courts, and by him presented to the respondents, which copies
showed votes cast for county commissioner as follows: 6,287 votes
for " Leonard Clark of Springfield," 132 votes for " L. Clark of
Springfield," 198 votes for " Leonard Clark," 6,421 votes for
" Lawson Sibley of Springfield," 114 votes for " Lawson Sibley,"
and 39 for other persons.  The respondents declined to count
the votes for " L. Clark of Springfield " as for the petitioner, and
found that Lawson Sibley had received a plurality of votes and
was elected, and notified him accordingly; but he declined to
accept the office.

The petitioner alleged that the name L. Clark was his name
in an abbreviated form, and he was as well known by that name
as by his full name of Leonard Clark; and that the votes cast
for " L. Clark of Springfield " were intended and should have
been counted for him, and it was the duty of the respondents to
find him chosen and to notify him of his election.  The respond-
ents, in their answer, denied that the petitioner had a plurality
of votes, and that L. Clark was his name; and averred that they
were ignorant, and had no means or authority for ascertaining,

whether he was as well known by the name of L. Clark as by that of Leonard Clark, or whether the votes returned as given for L. Clark were intended for him. The petitioner offered to prove by parol evidence that the ballots for "L. Clark of Springfield" were intended for him by those who cast them. The respondents admitted that such was the fact, if competent to be so proved, but objected to the evidence as incompetent and immaterial.

The judge reserved the case for the consideration of the full court; such judgment or order to be entered as law and justice might require.

The case was argued at the bar in January, and afterwards submitted on briefs to the whole court.

*M. P. Knowlton,* for the petitioner.

*G. Wells,* for the respondents.

GRAY, C. J. The statutes require that, in all elections, "the names of the persons voted for, the number of votes received for each person, and the title of the office for which he is proposed, shall be entered in words at length" in the town and city records; that copies of the records of the votes for county commissioner in the several cities and towns of each county shall be returned by the city and town clerks to the clerk of the courts, and that on the first Wednesday of the month succeeding the election the board of examiners shall meet, the clerk of the courts shall present the returned copies of votes, "and the board shall open and examine them, and notify the person chosen of his election," and shall within three days after such examination file such copies in the office of the clerk. Gen. Sts. *c.* 7, §§ 15, 17, 25, 26.

The petition now before us does not, like an information in the nature of a *quo warranto,* present the whole question of the right to the office of county commissioner, nor involve the consideration of what evidence might be received upon the trial of that right; but simply presents the question whether the examiners have duly performed the duties, imposed upon them by the statutes, of examining and counting the votes, and notifying the person thereby appearing to be chosen. The nature and limits of these duties have been clearly defined in former judgments of this court. "Nothing can be clearer than that the counting the votes and ascertaining the majorities and giving certificates

of the result are mere ministerial acts. They have no discretion in determining which of the candidates shall be elected. It must be the result of pure, inflexible mathematical calculation." *Strong, petitioner*, 20 Pick. 484, 497, 498. "They are not made a judicial tribunal, nor authorized to decide upon the validity or the fact of the election, in any other mode than by an examination of 'the returns' made to them, according to law. They are not required or authorized to hear witnesses, or weigh evidence. They have no power to send for persons or papers. If one result appears upon the returns, and another is the real truth of the case, they can only act upon the former. If they have done their duty, the remedy of the person actually elected to the office is not to be sought in a mandamus. This court has no power to direct public officers to do any more than their duty, or anything different from their duty." *Luce v. Mayhew*, 13 Gray, 83, 85.

In *Strong's case*, above cited, it was held that, if some of the returns added the residence of the candidate and others omitted it, the latter contained all that the statute demanded, and the former were not vitiated by including more; and therefore that the board of examiners, in refusing to add to votes for Elisha Strong of Northampton votes for Elisha Strong simply, put too strict a construction upon the statute and upon the returns. The court said: " The latter are only evidence of the will of the electors expressed by their ballots. If this evidence is such as to produce reasonable conviction of what that will is, it should be allowed to have its legitimate effect. But if they are so indefinite or ambiguous, in their descriptions of the persons voted for, that it cannot be ascertained that any person has a majority of all the suffrages, then the only proper course would be to send the matter back to the people, to give them an opportunity more clearly to express their will." 20 Pick. 494. Under the statutes then in force, a majority of the whole number of ballots cast was necessary to an election, and, if no person had received such a majority, a new election was required. Rev. Sts. *c.* 4, § 13; *c.* 14, §§ 18–20. But by the statutes now existing a plurality of votes only is necessary, and the person "having the highest number of votes shall be deemed and declared to be elected," so that a new election cannot be ordered unless two or more persons have an equal number of

votes, and it is the duty of the board of examiners to declare that person to be elected for whom the greatest number of votes can be ascertained from the returns to have been cast, although less than a majority of the whole. Gen. Sts. *c.* 7, § 14; *c.* 10, § 8.

In the present case, the returns of votes show that 6,287 votes were cast for " Leonard Clark of Springfield " and 198 votes for " Leonard Clark," 6,421 votes for " Lawson Sibley of Springfield " and 114 votes for " Lawson Sibley." These votes, reckoned according to the rule established in *Strong's case*, show 6,485 votes for Leonard Clark and 6,535 votes for Lawson Sibley, so that Lawson Sibley appears to be elected by a plurality of 50 votes, unless the board of examiners erred in refusing to count for Leonard Clark 132 other votes cast for " L. Clark of Springfield," and the question to be determined is whether the board of examiners erred in declining so to count these votes.

It is quite usual to express the Christian names of persons, both in their own signatures and by other persons, by one letter only, although a single letter rarely constitutes the whole Christian name. The use of an initial letter only, in legal documents, proceedings or votes, is not to be commended, because of the danger of uncertainty in the identification of the person; yet when no doubt of the identity is created, or any such doubt may be removed by competent evidence, the omission to set forth the Christian name at length, either in a person's own signature or in his description by another person, (even if the latter knows his full name,) though incomplete, is not necessarily erroneous. *Regina* v. *Avery*, 18 Q. B. 576. *Commonwealth* v. *Hamilton*, 15 Gray, 480. *Getchell* v. *Moran*, 124 Mass. 404.

Upon a case of a controverted election, brought before a legislative body vested with the power of determining the elections, returns and qualifications of its own members, or presented to a judicial tribunal by information in the nature of a *quo warranto* or other proper process to try the title to an office, evidence of extrinsic circumstances, such as that no other person of corresponding initials resided in the same city or county, or had been nominated by public convention or otherwise for the office in question, may be introduced, and may satisfy the tribunal having authority to receive and consider it that votes describing the Christian name by a single letter were intended for the same

person as votes setting forth at length a Christian name having a corresponding initial.

But the board of examiners cannot receive or consider such extrinsic evidence, and is confined to the records of votes returned and laid before it according to the statute. Upon the face of the returns, the votes cast for L. Clark of Springfield may possibly indicate a person whose whole Christian name consists of the letter L., or more probably a person having a name of which this letter is the initial, and which may be either Leonard or Lewis or Luther, or any other name beginning with this letter. This is the utmost that can be known from the returns, taken by themselves. The inference, however plausible, that the votes cast for " L. Clark" were intended to be cast for " Leonard Clark," is left by the returns a matter of conjecture only. It is impossible therefore for this court, upon the record before it, to say that the board of examiners erred in refusing to count the votes in question for Leonard Clark.

This view of the case is supported by the opinions of most respectable judges in Maine and in New York. *Opinion of Justices*, 64 Maine, 596. *People* v. *Ferguson*, 8 Cowen, 102, 106, 107. *People* v. *Seaman*, 5 Denio, 409. *People* v. *Cook*, 14 Barb. 259, and 4 Selden, 67. *People* v. *Pease*, 27 N. Y. 45. *People* v. *Smith*, 45 N. Y. 772, 779. In Michigan, the judges, differing from those of New York in the cases just cited, have gone so far as to hold that, even upon an information to try the title to an office, votes describing the Christian name by a single letter could not be added to votes for a person of a corresponding full name. *People* v. *Tisdale*, 1 Doug. (Mich.) 59. *People* v. *Higgins*, 3 Mich. 233. *People* v. *Cicott*, 16 Mich. 283. *People* .v. *Molitor*, 23 Mich. 342. In *People* v. *Cicott*, doubts were expressed whether such an application of the rule was not erroneous in principle; but neither in that case, nor in any other with which the learning and research of counsel have supplied us, has it been held to be competent for a mere board of examiners or canvassers to determine that such votes should be counted for the same person.

As Leonard Clark did not appear on the face of the returns to have received a plurality of votes, the contingency did not arise in which it would become the duty of the board of examiners,

under the Gen. Sts. *c.* 7, § 25, to ascertain the person of the name of Clark designated in any of the votes, in order to notify him of his election.

For these reasons, it is the opinion of a majority of the court that the writ of mandamus prayed for must be *Refused.*