WILLIAM MAY v. THE BOARD OF CANVASSERS OF WAYNE COUNTY.

*Elections—Recount of ballots—Authority of board of canvassers— Mandamus.*

Act No. 208, Laws of 1887 (3 How. Stat. § 234*a*), which provides for the correction of frauds and mistakes in the canvass and returns made by inspectors of election, is construed as follows:

    *a*—The statute gives an aggrieved party the *right* to a recount of the votes cast for and against him for the office for which he was a candidate, upon his complying with its provisions, enforceable by *mandamus;* citing *McKenzie v. Canvassers,* 70 Mich. 147.

    *b*—The purpose of the provision of the act giving the board

of canvassers *power* to cause the ballot-boxes, used in the election districts in which the errors, mistakes, or frauds complained of are alleged to have occurred, to be brought before it, is not to enable the board to ascertain whether a recount shall be had, but whether there was fraud or mistake in the original count.

*c*—This provision is not mandatory, but was intended to confer a *right* which the board might exercise in case of necessity, and its non-exercise is not jurisdictional.

*d*—The statute gives to neither the board of canvassers nor to the committee appointed to make the recount power to enter upon an investigation of alleged frauds committed at the election; nor does it confer power upon the board to compare the registration lists with the poll-lists for the purpose of determining whether the votes of unregistered persons were received, and to exclude the entire vote of a precinct on that ground.

*e*—If the resolution of the board directs the committee to proceed to investigate the matters set forth in the petition, a further provision authorizing them to open *all* ballot-boxes containing votes cast for the office for which the petitioner was a candidate should be construed as having relation to the investigation thus directed, and as being limited to the ballot-boxes in the precincts named in the petition.

*f*—It was held in *Maynard v. Board of Canvassers*, 84 Mich. 228, that where the facts are not in dispute, and it appears that the relator is not entitled to the office, the Court will not compel the issue of a certificate by *mandamus;* but it does not follow that the Court will accept an unauthorized count as finally establishing such fact; citing *Keeler v. Robertson*, 27 Mich. 129.

*g*—Where upon the face of the returns of the inspectors of election, as corrected by the authorized recount, the petitioner is shown to have received a plurality of the votes cast for the office for which he was a candidate, and the board of canvassers assumes to change said result by correcting the returns from a precinct according to an unauthorized recount of the ballots cast therein for said office, and by the rejection of the vote of an entire precinct on the ground that votes were cast therein by persons who were not registered, *mandamus* will lie to compel the board to reconvene, and vacate a resolution directing the issuance of a certificate of election to the candidate thus shown to have been elected, and direct that a certificate be issued to the petitioner.

*Mandamus.* Argued January 3, 1893. Granted February 3, 1893.

Relator applied for *mandamus* to compel respondent to reconvene, and direct the issuance to him of a certificate of election. The facts are stated in the opinion.

*William S. Sheeran* (*Fred A. Baker, Edwin F. Conely,* and *Orla B. Taylor,* of counsel), for relator.

*Otto Kirchner* and *John B. Corliss,* for respondent.

PER CURIAM. The relator was a candidate at the election of 1892 for the office of county clerk of Wayne county. On the face of the returns he received 26,799 votes, and his competitor, Henry M. Reynolds, 26,821. The relator presented to the board of county canvassers a petition asking a recount in certain of the precincts of the county. The board thereupon entered an order reciting the filing of the petition, and concluding with the following resolution:

"*Resolved,* that a committee of three be appointed by this board to proceed to make investigation of the matters set forth in said petition, in accordance with the provisions of Act No. 208, Pub. Acts of 1887; that they be, and are hereby, authorized to open all ballot-boxes containing votes for the office of county clerk, and to make correct and full returns in writing under their hands to this board, as required by said act."

The committee appointed proceeded to recount the votes in *all* the precincts of the county. As a result of the recount, relator received 26,791 votes and Reynolds 26,697. On the report to the board of county canvassers, a resolution was passed declaring that Reynolds was entitled to the certificate of election. This result was reached by throwing out the entire vote of the fourth precinct of the Fifth ward of the city of Detroit, on the ground that 121 votes were cast in the precinct by persons who were not registered; and by ignoring the recount in the township of Ecorse, and in the first and third wards of Wyandotte, on

the ground that the ballot-boxes had been tampered with, the board for that reason accepting the original returns in the three last named precincts. This action showed a plurality for Reynolds of 565. The recount of the votes in the fourth precinct of the Fifth ward agreed with the original returns, and, if the votes of that precinct be counted as cast, the result would be a plurality for Reynolds of 12 votes, accepting as correct the report of the committee in all other respects; but it is alleged in the petition, and not denied in the answer, that in the township of Hamtramck Reynolds made a gain by the recount of 20 votes. There was no petition for a recount in the township of Hamtramck, so that, if the action of the board in excluding the vote of the fourth precinct of the Fifth ward of Detroit and in recounting the votes in Hamtramck be held unauthorized, the result is that on the face of the returns, as corrected by the authorized recount, and assuming the action of the board to have been legal in adopting the original returns in Ecorse and the two Wyandotte districts, the relator is shown to have a plurality of 8.

It should be stated that the relator disputes the claim that votes were cast by unregistered voters in the fourth precinct of the Fifth ward of Detroit, and alleges that the apparent discrepancies are due to mistakes made in recording the names of voters.

1. The statute, Act No. 208, Laws of 1887 (section 234a, 3 How. Stat.), reads:

"Upon filing such petition, making such deposit, and giving at least twelve hours' written notice thereof to the opposing candidate, by handing to such candidate a copy thereof, or, if such candidate cannot be found, by leaving such copy at the last place of residence, it shall be the duty of such board of canvassers to proceed to make an investigation of the facts set forth in said petition. For such purpose the said board shall have power to cause

the ballot-boxes used in such election districts to be brought before them. The said board shall thereupon appoint a committee of their own number, as follows: The said board shall designate a member, who shall be the chairman of said committee, the candidate presenting such petition and the candidate opposed thereto shall each choose a member; * * * and the three thus chosen shall constitute a committee to investigate the errors, mistakes, or frauds complained of. Said committee shall, in some public place, where such candidates and their counsel may be present, if they so desire, without unnecessary delay, proceed to open the ballot-boxes from such districts, townships, or wards, and to make a recount thereof as to such candidates."

Two questions relating to the construction of this statute are suggested:

*First.* Is the production of the ballot-boxes, which is authorized, for the purpose of a preliminary investigation as to whether there shall be a recount?

*Second.* If it is not for that purpose that the ballot-boxes are to be brought before the board, is the failure to have the boxes produced before the full board in the first instance jurisdictional, so that a recount, in the absence of such preliminary inspection of the boxes by the board, is extra-official?

The contention of the respondent's counsel is that the investigation which the board is to make of the facts stated in the petition is preliminary to a determination of whether the facts are such as to warrant a recount. As stated in the respondent's brief, their position is this:

" We submit that, in the first place, the board must be satisfied that there is reasonable ground for the claim of petitioner that he has been aggrieved by the official returns. It cannot be that any one, by the filing of a petition and the deposit of $100, can impose upon the board the duty of entering upon a recount of all the ballots cast in the county."

This contention of counsel is fully answered by the case of *McKenzie v. Board of Canvassers,* 70 Mich. 147. In that case a petition was filed for a recount, and the board

returned that the votes were counted twice by the inspectors of election of the ward, and each time the result was the same; that the number of votes cast corresponded with the poll-list kept at the time; that the relator was present at the time when the count was made by the inspectors of election, and made no objection to the count or result for either fraud or mistake; that, at the meeting of the board of canvassers held to consider the subject of relator's petition, he was asked by the board if he had any proof he wished to submit, tending to show error or fraud on the part of the inspectors of election in the Third ward; that relator said he did not think there was any fraud or intentional error, but that there might have been a mistake in the counting; that his attorney was present with him before the board, and claimed in behalf of the relator that it was the duty of the respondent, as the matter then stood, to proceed and make a recount of the ballots cast for the office of alderman in said ward, and that relator should offer no proofs; that, the board being satisfied the count made by the inspectors of election was correct, it declined to recount the votes, and proceeded with the canvass of the vote as returned by the inspectors of election, and declared the relator's opponent elected.     The Court held that it was intended by the statute in question to give an aggrieved party the right to a recount of the votes cast for and against him for the office for which he was a candidate, and *mandamus* was granted.

The purpose for which the board shall have the power to cause the ballot-boxes to be brought before it is that of a recount of the ballots.    It is not for the purpose of ascertaining whether a recount shall be had, but of ascertaining by a recount whether there was fraud or mistake in the original count.    Is the failure to cause these ballot-boxes to be thus brought before the board jurisdictional?

or, on the other hand, was this provision intended to con-fer a right which the board may exercise in case of neces-sity? We think the latter construction is the only one of which the language is susceptible. In terms there is no mandatory requirement that the ballot-boxes shall be brought before the board, while the statute is mandatory that a recount shall be had.

It is to be borne in mind that there was no suggestion, so far as appears, made to the board as a board, that the ballot-boxes had been tampered with, prior to the opening of the boxes and the recount of the votes. In the absence of any such suggestion, the legal presumption, of course, is that the ballot-boxes had been preserved in their integ-rity, and that the sole duty of the committee would be performed by a recount of the ballots contained within the boxes. We have no doubt that, if it had been brought to the attention of the board that the ballot-boxes were claimed to have been tampered with, it would have become the duty of the board to cause the boxes to be brought before it and make an investigation. Such inves-tigation would, by the terms of the statute, evidently be confined to an inspection of the boxes themselves, and the board would be authorized to exercise the *quasi* judicial function of determining whether a recount of the ballots as cast could be had. If an inspection of the boxes show that they have not been preserved in their integrity, we think it would be extravagant to claim that the law is so imperative in its requirements that the official return, presumably correct, could be overcome by any such exper-iment as a count of ballots which are not apparently the same as those cast at the election. *People v. Cicott,* 16 Mich. 283. But in the present case no attempt was made by the board itself to inspect these ballot-boxes, and the conclusion reached was based not upon the required inspection by the board, but upon testimony taken by the

committee without authority of law, and upon the report of the committee to the board. This, in our judgment, was unauthorized.

2. The board had no power to exclude the whole vote of the fourth precinct of the Fifth ward. The statute gives to neither the board nor the committee of the board power to enter upon an investigation of alleged frauds committed at the election. Nor is the power conferred upon the board to compare the registration lists with the poll-lists for the purpose of determining whether the votes of non-registered persons were received. The powers of the committee are ministerial, and not judicial. *Andrews v. Judge of Probate,* 74 Mich. 285; *Coll v. Board of Canvassers,* 83 Id. 371; *Roemer v. Board of Canvassers,* 90 Id 27; *Luce v. Mayhew,* 13 Gray, 83; *Clark v. Board,* 126 Mass. 284.

3. It is suggested that the relator, having participated in the recount under a resolution authorizing a count of all the ballot-boxes of the county, is bound to accept the action of the committee as a whole, and cannot now question the authority of the committee to count the ballots in the township of Hamtramck, a precinct not included in the petition. But we think this is not a correct view. When it is considered that the resolution itself is limited to a direction to the committee to proceed to investigate the matters set forth in the petition, the authority contained in the resolution expressed in the words, "that they be, and are hereby, authorized to open all ballot-boxes containing votes for the office of county clerk," should be construed as having relation to the investigation directed, and as being limited to the ballot-boxes in the precincts named in the petition; but, if any other construction were open, the petitioner certainly ought not to be held estopped because the board assumed to include in a grant of what he was legally entitled to a direction to proceed to an investigation of matters not within the jurisdiction of either the

board or the committee.   It does not appear affirmatively that relator participated in the recount in Hamtramck.

4. It is suggested that, as *mandamus* is not a writ of right, the Court will not direct its issue if it appear that the correct result was reached by the board; and that, as the vote in Hamtramck has in fact been recounted, and as it appears by such recount that Reynolds gained 20 votes, sufficient to elect him if the original returns in Ecorse and the two wards in Wyandotte be accepted, it follows that the petitioner has not been injured by the action of the board.   The committee exceeded its powers in counting the vote in Hamtramck.   If the original returns in Wyandotte and Ecorse be accepted, still, in our judgment, the extra-official statement of the committee relating to the votes cast in the township of Hamtramck cannot be accepted in preference to the legal certificate of the inspectors of election.   A similar question was presented in *Roemer v. Board of Canvassers, supra,* and the same conclusion reached.   It that case it was claimed that the tally-sheets produced showed that the second statement of votes was correct, and impeached the first returns.   It was stated in the opinion that there was nothing appearing which justified an inference that any but honorable motives actuated the canvassing board; but it was held that, as the board acted without authority, its unauthorized action could not be considered as overturning the original and only legal returns.   So here it would be but reasoning in a circle to hold that the action of the board in relation to the fourth precinct of the Fifth ward of Detroit, and the township of Hamtramck was unauthorized, and a nullity, and yet to hold that such action concludes either the parties or the Court.   In so far as the case of *Sherburne v. Horn,* 45 Mich. 160, has been construed as in conflict with these views, it was overruled by *Coll v.*

*Board of Canvassers* and *Roemer v. Board of Canvassers.*

As the case of *Sherburne v. Horn* has been again cited as sustaining the contention of respondent's counsel, we have examined with care the original application, and find the facts to be that the board of county canvassers assumed to throw out the votes of two townships,—one upon the ground that the signatures to the certificate were not genuine, and the other upon the ground·that but two of the inspectors of election signed the certificate. The case was determined upon the application for an order to show cause. We are constrained to say that the conclusion reached by the Court that *mandamus* would not lie to compel a reconvening of the board and the canvassing of the ballots is not in line with the great weight of author-ity either in this State or elsewhere, and certainly is not in harmony with the cases of *Coll v. Board of Canvassers* and *Roemer v. Board of Canvassers,* above cited. See, also, *State v. Hill,* 10 Neb. 58 (4 N. W. Rep. 514); *People v. Hilliard,* 29 Ill. 413; *State v. Canvassers,* 36 Wis. 498; *Strong, Petitioner,* 20 Pick. 484; *Kisler v. Cameron,* 39 Ind. 488.

In *Maynard v. Board of Canvassers,* 84 Mich. 228, it was held that where the facts are not in dispute, and it appears that the relator is not entitled to the office, the Court will not compel the issue of a certificate by *man-damus;* but it does not follow from this that the Court will accept an unauthorized count as finally establishing such, fact. See *Keeler v. Robertson,* 27 Mich. 116, 129, in which case it was said:

"It would be contrary to public policy to allow any evidence whatever, based upon a counting made in direct violation of law, to be received at all. The object of the statute is to prevent tampering with the ballots; and, inasmuch as it would be impossible to determine with certainty whether any fraud had been committed in any

unauthorized counting, there can be no propriety in allow-
ing any evidence resting on it."

In what has been said it is not intended to impugn the
motives of the board or the committee, or to pass upon
the question of whether the evidence before the board was
sufficient to justify its action if it had been invested with
the authority to act upon such evidence. On the contrary,
enough does appear in the return to indicate that the case
was one calling for a careful and conscientious judicial
scrutiny, which we have no doubt it will receive in the
proper tribunal. We rest our conclusions wholly upon the
ground that the board exceeded its powers. The questions
involved in the case are properly triable in *quo warranto*
proceedings.

We deem it proper to add that the law in its present
form is not well adapted to our present system of voting.
The chief purpose of the act was to furnish a way for the
correction of mistakes in the original count. At the time
of its enactment candidates were voted for on separate
tickets, and it could rarely occur that any ground of dif-
ference would exist as to what ballots should be counted
for a particular candidate. Since its enactment the general
election law of 1891 has provided for an official ballot,
upon which the names of all the candidates are printed,
and prohibiting distinguishing marks. It has come within
the observation of this Court that this provision has resulted
in bitter controversies, and has furnished ample opportunity
for radical disagreements as to what constitutes distinguish-
ing marks, and the power thus vested in partisan tribunals
arbitrarily to determine this question is liable to result
in future scandal, unless some means of direct judicial
review be provided.

We think the *mandamus* in this case should issue as
prayed.

HOOKER, C. J., did not sit.