TRUMBULL *v*. BOARD OF CANVASSERS OF THE CITY OF JACKSON.

1. ELECTIONS—CANVASS—RECOUNT—VOTING MACHINES—PRESUMPTIONS.

> The legal presumption that ballot boxes are preserved in their integrity, arising from the various provisions of law for their sealing and custody, finds no parallel in the case of voting machines authorized to be used by sections 3804–3823, 1 Comp. Laws, there being no similar law to prevent their being changed subsequent to the election.

2. SAME—RECOUNT—STATUTORY PROVISIONS.

> The statute (§ 3725, 1 Comp. Laws) providing for a recount of the ballots of an election by the board of canvassers has no application to a rereading of the totals shown by a voting machine, the remedy, if there be one in such a case, being by quo warranto as provided by that section.

Certiorari to Jackson; Parkinson, J. Submitted June 6, 1905. (Calendar No. 21,090.) Decided June 21, 1905.

Mandamus by Lyman B. Trumbull to compel the board of canvassers of the city of Jackson to reconvene and recanvass the vote of a city election. There was an order granting the writ, and respondent brings certiorari. Reversed.

From the petition for the writ of certiorari and from the return to the writ the following statement of facts is made:

In the city of Jackson, at the election held April 3, 1905, Abbott voting machines were used. 1 Comp. Laws, §§ 3804–3823. The office of city attorney is an elective office, and relator (appellee) was one of the candidates for this office at said election. According to the returns of the inspectors of election, it appeared that relator had been defeated by 23 votes. To the board of canvassers, which

met on April 6th to canvass the returns of said election, relator presented a verified petition and demand for a recount of the votes cast for the office in question in the first precinct of the Second ward of the city. The petition set out, in substance, that a mistake had been made by the precinct inspectors in crediting to relator the votes given for his opponent and in crediting to his opponent the votes given for relator, thereby depriving relator of 27 votes which were cast for him, and giving to his opponent 27 more votes than were actually cast for him. The board of canvassers declined to act as requested, and relator presented in the circuit court for the county of Jackson his petition for a writ of mandamus to compel the said board to reconvene and proceed to investigate the matter according to the provisions of Act No. 208, Pub. Acts 1887. Accompanying this petition were (1) a copy of the demand made upon the board of canvassers; (2) affidavits of three persons, tending and calculated to show that the voting machine used was, after the vote was declared, locked, and that it had not been changed or interfered with. An order to show cause was granted, in answer to which the board of canvassers raise the questions in issue by the following statements:

"*Sixth.* Said respondents further answering, say that they took no other or further proceedings upon the petition of said Lyman B. Trumbull, presented to them as aforesaid, because they are advised and believe that the said petition did not call for any further or other proceedings on the part of said board of canvassers, and that there is no law authorizing the said board to take any proceedings towards the correction of the alleged mistake referred to by said Trumbull in said petition. They further say that the election returns from the said first precinct of the Second ward were complete, and showed that John F. Henigan received twenty-seven more votes in said precinct than said Trumbull did, and were signed and sworn to by four inspectors of election, two of whom belonged to the same political party with said Trumbull, including the chairman of said board, George W. Scotford; that these returns were on file with the city recorder, the

clerk of said board, and that respondents were advised and believe that the provisions of Act No. 208 of the Public Acts of 1887, referred to in the fifth paragraph of the petition of said Trumbull to this court, are inapplicable to the matters set forth in the petition of said Trumbull to the said board of canvassers, or to any precinct where the Abbott voting machine is used under the laws of the State and the charter of said city.

"*Seventh.* These respondents, further answering, say that they are advised and believe that said voting machine could have been tampered with and altered so as to show a different result as to the vote for any particular office after the closing of the polls on election day without leaving any evidences that the machine had been meddled with or tampered with, and they refer to the affidavit of said Charles Worden, hereto annexed, in support of that fact; and they further say that they are advised and believe that there is no law which requires the Abbott voting machine to be kept, after the polls are closed, in such condition as to show what the vote was at the closing of the polls, and refer to and make a part of this answer the provisions of subdivision 7 of section 4 of title 18 of said charter, and all other provisions of said charter relating to the use of and care and custody of said machines.

"*Eighth.* Further answering, the respondents say that there were no affidavits accompanying the said petition of said Trumbull presented to said board, and no proof made as to what had been done with said machine after the closing of the polls on the 3d day of April, 1905; that it is a fact, and it was known to said board at the meeting thereof, that the machine which had been used in the first precinct of the Second ward had been allowed to remain from Monday until some time in the afternoon of Wednesday following in the voting hall of the Second ward where it had been used on election day, unguarded by anybody; that this fact was mentioned at the meeting of said board, and was not contradicted by said Trumbull or any one in his behalf, and comments were also made at the meeting of said board upon the fact that it would be an easy matter to tamper with the vote upon said machine, and it was stated that the vote upon the same might become changed by transporting the machine from one place to another and the keys and padlocks on said machine, as respondents are informed and believe, are very ordinary affairs, and could be easily duplicated, or the padlocks unlocked by other keys or instruments."

There accompanied this answer an affidavit, made by one of the same persons whose affidavit had been attached to the petition for mandamus, which sets out facts tending to show that it was possible to tamper with the machine in question after the vote was declared and before the machine came to the custody of deponent. From none of the papers before us does it appear that it is probable or that it is suspected that any person did change or alter the machine in any way, or that it does not now record the votes cast by it precisely as it did when, on the night of election, the machine was opened and the votes declared.

The court below heard the matter on petition and answer, and ordered that the writ of mandamus issue to the board of canvassers,—

" Commanding them upon pain and peril that shall fall thereon to reconvene within five days after service of said writ upon them by delivering a certified copy thereof to the president and clerk of said board, and investigate the matters set forth in the petition filed with them by said relator according to provision of Act No. 208 of the Public Acts of 1887; that they appoint a committee in accordance with law, who shall be authorized to open the voting machine used in the first precinct of the Second ward of said city to investigate and to make correct and full returns of the vote cast for the office of city attorney in writing under their hands to said board as required by said act, and commanding said board of canvassers thereupon to canvass and certify the vote upon the office of city attorney in accordance with report of said committee."

Respondent, the board of canvassers, thereupon applied for and was allowed a writ of certiorari to review the action of the circuit court.

The law permitting the use of the Abbott voting machines reads in part as follows:

" (3808) SEC. 5. Said township board, council or common council, shall make rules and regulations for the care and use of said voting machine, but the arrangement of the room in which the election is being conducted, the

duties of the election commissioners and officers of the election before, during and after the election, and the manner of conducting the election and canvassing the vote thereat shall not be changed except as is necessary in consequence of the substitution of the voting machine for the ballots, ballot boxes and booths used under existing laws."

" (3822) SEC. 14. The provisions of the election laws of the State not inconsistent with the provisions of this act shall apply to all townships, villages and cities that use the Abbott voting machine."

No rules or regulations have been made by the common council of Jackson to insure the machines, for any period after an election, from change.

Act No. 208, Pub. Acts 1887, as amended by Act No. 267, Pub. Acts 1897 (1 Comp. Laws, § 3725), is here given in full:

" An act to provide for the correction of frauds and mistakes in the canvass and returns made by inspectors of elections.

" (3725) SECTION 1. *The People of the State of Michigan enact*, That any candidate voted for at any election, conceiving himself aggrieved on account of any fraud or mistake in the canvass of the votes by the inspectors of election, or in the returns made, may (within three days after the conclusion of a township canvass, if a township office) or on or before the close of the last day upon which the board of city canvassers meet, if a city or ward office, or board of village canvassers, if a village office, present to and file with the clerk of such board a written petition, which shall be sworn to, setting forth, as near as may be, the errors, mistakes or frauds complained of, and the township, ward or village in which they occur, and asking for a correction thereof. He shall at the same time deposit with the clerk of said board the sum of ten dollars for each and every township, ward or village referred to in his petition: *Provided*, that no candidate shall be required to deposit more than one hundred dollars, which sum shall be paid in case such petitioner does not establish a fraud or mistake, as set forth in his petition, by the clerk of the board of city canvassers, to the city treasurer for the use of the city and by the clerk of the village to the village treasurer and by the township clerk to the township treasurer for the use of the city, vil-

lage or township, as the case may be. Upon filing such petition, making such deposit and giving at least twelve hours' written notice thereof to the opposing candidate by handing to such candidate a copy thereof, or if such candidate cannot be found, by leaving such copy at the last place of residence, it shall be the duty of such board of canvassers to proceed to make an investigation of the facts set forth in said petition. For which purpose the clerk, if no meeting be already appointed, shall call a meeting of such board of canvassers and the said board shall have power to cause the ballot boxes used in such election districts to be brought before them. The said board shall thereupon appoint a committee of their own number as follows: The said board shall designate a member who shall be the chairman of said committee, the candidate presenting such petition and the candidate opposed thereto shall each choose a member, and if such candidates, or either of them, decline to choose a member, then the board shall designate, and the three thus chosen shall constitute a committee to investigate the errors, mistakes or frauds complained of. Said committee shall, in some public place, where such candidates and their counsel may be present, if they so desire, without unnecessary delay proceed to open the ballot boxes from such village, townships or wards, and to make a recount thereof as to such candidates, and make correct and full returns in writing under their hands to said board, showing the whole number of votes given, the names of the candidates, and the number of votes given to each, written out in words and figures as upon the ballots. Said committee, upon making such recount, shall at once return the ballots to their respective boxes, carefully fasten and seal the same and deliver them to the officer having the care and custody thereof. Said board of canvassers, upon receiving the report of such committee, shall accept the same as correct, anything in the previous declaration, certificate or returns from such township, ward or village to the contrary notwithstanding. Any candidate not receiving a certificate of election, may for errors apparent upon the face of the returns have the same examined and corrected upon certiorari to the circuit court of the county, according to the rules and practice applicable to such writs. In all cases where, by reason of such recount, the petitioner succeeds in establishing a fraud or mistake, as set forth in his petition, and receive a certificate of election, the money

deposited by him shall be refunded. For fraudulent or illegal voting, or tampering with the ballot boxes before a recount by the board of canvassers, the remedy by quo warranto shall remain in full force, together with any other remedies now existing. The usual final adjournment of a township board of canvassers shall be deemed subject to the recall of the board as herein provided."

*Wilson & Cobb*, for relator.

*Richard A. Price*, for respondent.

OSTRANDER, J. (*after stating the facts*). As adopted, the act above quoted provided for the application by an aggrieved candidate to the board of city canvassers if a city or ward office was in question, to district boards (whatever that may have been intended to mean) and to the board of county canvassers in all other cases. In other respects, the provisions of the act were substantially the same as they now appear. Before the act was amended to its present form, the legislature in 1891 (Act No. 190, Pub. Act 1891) provided for an official ballot upon which the names of all candidates for office are to be printed. Later the case of *May* v. *Board of Canvassers*, 94 Mich. 505, was before this court. It was said in the opinion in that case:

"We deem it proper to add that the law in its present form is not well adapted to our present system of voting. The chief purpose of the act was to furnish a way for the correction of mistakes in the original count. At the time of its enactment candidates were voted for on separate tickets, and it could rarely occur that any ground of difference would exist as to what ballots should be counted for a particular candidate. Since its enactment the general election law of 1891 has provided for an official ballot, upon which the names of all the candidates are printed, and prohibiting distinguishing marks. It has come within the observation of this court that this provision has resulted in bitter controversies, and has furnished ample opportunity for radical disagreements as to what constitutes distinguishing marks, and the power thus vested in partisan tribunals arbitrarily to determine this question is

liable to result in future scandal, unless some means of direct judicial review be provided."

In the case before us we are confronted with another difficulty. The act in terms makes it the duty of the board of canvassers, upon receiving the petition of an aggrieved candidate, "to proceed to make an investigation of the facts set forth in said petition." For such purpose the power is expressly given to the board to cause ballot boxes to be brought before it, to appoint a committee to make a recount of ballots. It was said in *May* v. *Board of Canvassers*, supra, that the board, in the absence of suggestion to the contrary, might indulge the legal presumption that the ballot boxes called for had been preserved in their integrity. This presumption is, of course, based upon the various provisions of law for returning the ballots to boxes by the inspectors and the sealing and custody of the boxes.

"We have no doubt," the opinion proceeds, "that, if it had been brought to the attention of the board that the ballot boxes were claimed to have been tampered with, it would have become the duty of the board to cause the boxes to be brought before it and make an investigation. Such investigation would, by the terms of the statute, evidently be confined to an inspection of the boxes themselves, and the board would be authorized to exercise the quasi judicial function of determining whether a recount of the ballots as cast could be had. If an inspection of the boxes show that they have not been preserved in their integrity, we think it would be extravagant to claim that the law is so imperative in its requirements that the official return, presumably correct, could be overcome by any such experiment as a count of ballots which are not apparently the same as those cast at the election."

It is true that this court has decided that a vote cast by a machine is a constitutional ballot. *City of Detroit* v. *Board of Election Inspectors*, 139 Mich. 548. It is true that the Abbott voting machine is one used by express legislative permission. But there is no basis in the statute authorizing its use, or in any rules or regulations of the city of Jackson, for the legal presumption that,

after the inspectors of election have read the machine at the close of an election and declared the result, the machine and the registers of votes remains unchanged.   It may be that, as in the case before us, a showing of facts can be presented from which the board of canvassers may presume that in fact the machine has remained unchanged.   If the fact is contested, may the board of canvassers determine the truth of the matter ?   This question must be answered with reference to the other provisions of the statute, as well as to general rules concerning the exercise of judicial functions by tribunals such as a board of city canvassers.

A provision of the statute to which we direct attention is the one reading:

"For fraudulent or illegal voting or tampering with the ballot boxes before a recount by the board of canvassers, the remedy by quo warranto shall remain in full force together with any other remedies now existing."   1 Comp. Laws, § 3725.

Whatever our view may be of the legal force of the provision of the statute referred to, its presence in the law is bound to affect our judgment concerning the applicability of the law to the case of a contested election when the voting is by machine.   There being no legal presumption that the machine has remained unchanged, the fact must be, in some cases at least, determined by the testimony of those supposed to have information.   This involves the weighing of testimony, and generally the exercise of judicial power.

Plainly, the act in question was not intended for elections conducted by machines.   This being so, in view of the difficulties in applying the statute to the case before us —difficulties which we have rather suggested than discussed—we are of opinion that the order of the court below directing the board of canvassers to examine the voting machine should not have been made.   It is reversed, and set aside.   No costs are awarded.

MOORE, C. J., and CARPENTER, MCALVAY, and HOOKER, JJ., concurred.