ALWARD *v.* BOARD OF SUPERVISORS OF OAKLAND COUNTY.

1. INTOXICATING LIQUORS — ELECTIONS — RECOUNT — LOCAL OPTION LAW.

> Certiorari is the appropriate remedy to review the action of the board of supervisors in suspending the operation of the general liquor law in a county, acting in accordance

with a vote of the electors of such county, in pursuance of the provisions of Act No. 207, Pub. Acts 1889, as amended.

2. SAME—PROCESS—PARTIES.
    Where the process was not directed to or served upon the board of supervisors, the court will decline to deliver judgment until that body has been given opportunity to make return, even though, upon the record presented, the action of the board ought to be quashed.

3. ELECTIONS—CERTIORARI—RECOUNT—LOCAL OPTION LAW.
    In certiorari proceedings to review the action of the board of supervisors of a county in recounting the votes cast at a local option election, acting under the provisions of Act No. 327, Pub. Acts 1913, providing for a recount of votes canvassed by boards of supervisors, where the only theory upon which the remedy is based is not supported by the record, the relief asked for cannot be granted.

4. SAME—STATUTES.
    As to the powers of the board of supervisors under Act No. 327, Pub. Acts 1913, in case of recount of ballots cast in a local option election—*quære.*

Certiorari by Neal Alward against the board of supervisors of Oakland county and others to review the action of said board in suspending the operation of the general liquor law in Oakland county. Submitted June 17, 1915. (Calendar No. 26,757.) Writ quashed September 15, 1915. Rehearing denied December 22, 1915.

*James H. Lynch* and *Charles S. Matthews (Fred A. Baker,* of counsel), for plaintiff.

*Grant Fellows,* Attorney General, *L. W. Carr,* Assistant Attorney General, *Frank L. Doty,* Prosecuting Attorney, *Glenn C. Gillespie,* Assistant Prosecuting Attorney, and *A. L. Moore,* for defendants.

OSTRANDER, J. At the election held April 5, 1915, in Oakland county, there was submitted to the electors

the proposition: "Shall the manufacture of liquor and the liquor traffic be prohibited within the county?" It appears from the transcript of the record of the board of supervisors of Oakland county, about the accuracy of which no question is made, that on April 15, 1915, said board being in session, a committee of the board, earlier appointed, reported a canvass of the votes cast at the election which showed, in conformity with the returns of the election inspectors, that 6,367 votes had been cast in favor of, and 6,334 votes had been cast against, the proposition; the total vote being 12,701. The report was accepted and adopted. Thereafter, apparently on the same day, the plaintiff in certiorari filed a petition with the board asking for a recount of all votes. A committee of the board entered upon the business of recounting the votes, sending for the various ballot boxes. This occupied the time until the afternoon of April 17th, Saturday, when the board adjourned until Monday, April 19th, at 9 a. m. During the forenoon of Monday the committee concluded the recount. On April 20th the board instructed the clerk to subpœna all election inspectors and election clerks of the first ward, first precinct of the third ward, second precinct of the fourth ward, and the fifth ward, to appear before the board; "Avon inspectors to be subpœnaed later." During the afternoon a number of witnesses were examined. On April 21st the prosecuting attorney read to the board an opinion of the attorney general. At the afternoon session the committee reported, with a tabulation which showed slight changes from the returns in the vote in 14 precincts, a total vote of 12,662—6,318 no, and 6,344 yes, a majority for local option of 26. The report contains the following:

"In reaching the above conclusion, a recount of the entire vote was made in all the wards and townships of Oakland county, and it was found that there was a

majority against local option of 22. Then, on advice from the prosecuting attorney and the attorney general, the following townships and wards were rejected and not considered, because ballot boxes from said townships and wards were not sealed as required by law. The official canvass of the committee appointed by the board of supervisors at this session was accepted."

There follows a list of 17 voting precincts. The report was accepted and adopted, and the board then entered upon its record the statutory preamble and resolution and ordered its publication. It passed a resolution offering a reward of $1,000 for information leading to the arrest and conviction of any person or persons unlawfully tampering with the ballot boxes or unlawfully placing ballots in the ballot boxes of the township of Avon, or any wards of the city of Pontiac, after the close of the election held April 5, 1915.

There is a general law, according to which liquors may be manufactured and sold, in force in every county in the State, unless, by the votes of the electors of the county, its operation is locally suspended and such manufacture and sale is prohibited in the county. The vote being in the affirmative, it is the duty of the board of supervisors to declare that from and after the 1st day of May, succeeding the election, it shall be unlawful to manufacture or sell liquors in the county. It is the duty of the board of supervisors to canvass the votes and declare the result of the election. In *Paul* v. *Circuit Judge*, 169 Mich. 452 (135 N. W. 283), it was held that the vote was the vital thing; the ministerial duty of the board to pass or not to pass the statutory preamble and resolution and publish the same depending upon the vote. Prior to the year 1913 no recount of such votes was provided for. The conclusion of the board, fraud or apparent mistake being excluded, was final. *Thomas* v. *Abbott*, 105 Mich. 687 (63 N. W. 984) ; *Haehnle Brewing Co.* v. *Board of Supervisors*, 156 Mich. 493 (121 N. W. 209).

In the general election law there is a provision for a recount of votes (1 Comp. Laws, § 3725), and various provisions of the law are calculated, if they are obeyed, to preserve ballots cast at an election, so that they may be re-examined and counted. Considering them, it was held that a recount could be had only in cases where the recounting board could find, from an inspection of the ballot box, that the statutory requirements for the preservation of the ballots, as cast, had been observed. *May* v. *Board of Canvassers,* 94 Mich. 505, 511 (54 N. W. 377); *Keith* v. *Wendt,* 144 Mich. 49 (107 N. W. 443); *Ward* v. *Culver,* 144 Mich. 57 (107 N. W. 444). The primary election law, Act No. 4, Extra Session 1907, and Act No. 281, Pub. Acts 1909, provide for a recount of votes. *Ritze* v. *Board of Canvassers,* 172 Mich. 423 (137 N. W. 964). See, also, *Bradley* v. *Board of State Canvassers,* 154 Mich. 274 (117 N. W. 649). In *Keith* v. *Wendt, supra,* it was said:

"We held, in *May* v. *Board of Canvassers of Wayne Co.,* 94 Mich. 511 [54 N. W. 377], that, where it was claimed that the ballot box had been tampered with, it was the duty of the board to cause the box to be brought before it and make an investigation. It was also said that such investigation would be confined to an inspection of the box itself. It was not determined in terms that the board must, as a prerequisite to a recount, find that the box had been sealed as the statute requires; but we think such a view was foreshadowed. Further consideration has strengthened our belief that there can be no certainty in proceedings under this statute, if boards are permitted to set up standards of their own in regard to the steps necessary for the preservation of the ballots cast. The test must be this: Have the ballots been preserved as the law directs?"

In *Ritze* v. *Board of Canvassers, supra,* it was said:

"The board of canvassers took the testimony of the
187 Mich.—37.

primary election inspectors, with reference to the condition of the box. They likewise compared the poll list used in said precinct with the enrollment book. They had no authority to do either."

In *Bradley* v. *Board of State Canvassers, supra,* we said:

"What is provided for is a recount—another count —of the ballots."

The law of the State being as here indicated, the legislature in 1913 made certain changes in the statutes. By Act No. 352, Pub. Acts 1913, the law which provides for the election of boards of county canvassers and defines their duties was amended, so as to provide that any candidate voted for at an election, or any qualified elector voting at the last preceding election, where a constitutional amendment or any other proposition had been voted on, may secure a recount of votes, and for this purpose the board is given power to cause ballot boxes to be brought before it and make a recount. No power is conferred to subpœna witnesses or to do more than recount the votes. But the returns made by the board upon recount are deemed to be correct, anything in the previous returns from said township, ward, or district to the contrary notwithstanding; and for error apparent upon the face of the returns, they may be "examined and corrected upon certiorari to the circuit court of the county." Act No. 320, Pub. Acts 1913, is entitled:

"An act to provide for a recount of votes cast at an election for candidates for office, or proposed amendments to the Constitution or any other question or proposition which are canvassed by the board of state canvassers."

This act empowers the board of State canvassers to recount votes and to require "any inspector of election, county officer, or other person, to appear for any such purpose as may be desired," to demand and cause the

ballot boxes "and returns in connection with any such election to be brought before it."

"The returns made by the said board of State canvassers of any recount shall be deemed to be correct, anything in the return of any board of election inspectors, or any county or district canvassing board to the contrary notwithstanding."

Act No. 327, Pub. Acts 1913, is entitled:

"An act to provide for a recount of votes canvassed by boards of supervisors."

It contains three sections. In the first it is provided that whenever a proposition is submitted to the electors, and the votes cast are canvassed by the board of supervisors of the county, any person voting in the county at the election, who considers himself aggrieved "on account of any fraud or mistake in the canvass of the votes by inspectors of election or the returns made by said inspectors," may ask for, and, upon complying with certain conditions, may have, a correction of the mistakes or frauds complained of. The petition must be in writing, and set forth as near as may be the nature of the mistakes or frauds. By section 2 it is made the duty of the supervisors to appoint a committee from its members—

"to investigate the facts set forth in said petition. For such purpose the said board shall have power to cause the ballot boxes used in such election districts to be brought before said committee. Said committee shall thereupon in some public place where the persons interested, and their counsel, if they so desire, may be present, proceed forthwith to open the ballot boxes from such districts, townships or wards and to make a recount thereof as to said proposition, and for the purpose of recounting the votes upon said question, said board shall have the right to subpœna witnesses, administer oaths, and take all necessary proceedings to insure a correct count of the votes cast upon the proposition, and make correct and full return in writing under their hands to said board, showing the full

number of votes given, the number of votes in favor of said proposition, and the number of votes against said proposition. As soon as the recount is completed, said board shall at once return the ballots to their respective boxes, carefully fasten and seal the same, and deliver them to the officer having the care and custody thereof. The returns made by the said board of supervisors upon recount shall be deemed to be correct, anything in the previous return from such township, ward or district to the contrary notwithstanding."

By section 3 it is provided that any person may—

"for error apparent upon the face of the returns have the same examined and corrected upon certiorari to the circuit court of said county according to the rules and practices applicable to such rights. * * * For fraudulent or illegal voting or tampering with the ballot boxes before a recount by the board of supervisors, all legal remedies now existing shall remain in full force."

Referring again to the record, we find that the prosecuting attorney of Oakland county, while the recounting of votes was going on, addressed to the attorney general a letter, advising him:

"(1) That the ballot box from Avon township had been tampered with, the seals were broken, and it was evident that some instrument had been used to pry off a hinge, and the lock was bent out of shape. The testimony of a township clerk tended to show the contents of the box were apparently the same as when the box was sealed. A recount of the votes in the box showed quite a material difference from the report filed by the election inspectors. The question is as to whether or not the board should accept the result of the recount of the ballots found in the box or accept the original report of the election inspector.

"(2) The ballot box from Bloomfield township was not sealed as required by law. The end of the straps over the back of the hinges had not been sealed, neither was the lock sealed.

"(3) The seals of the ballot box from the township of Holly were broken. The township clerk testified

before the committee that the seals were broken in bringing the box to Pontiac. In addition to this, however, there was never any seal upon the lock of the box.

"(4) The seals upon the ballot box from the township of Independence were broken. The supervisor testified before the committee that this was caused by bringing the ballot box to Pontiac, and that the seals were unbroken at the time the box was placed in an automobile to bring to Pontiac.

"(5) The seals on the ballot box from the township of Oakland were loosened. The township clerk testified that the seals would not stick to the box. In addition to this, there was never any seal over the lock.

"(6) The ballot box from the township of Pontiac was sealed by having a strap fastened to a handle which had to be turned in order to open up the slot in the box. There was no seal on the lock.

"(7) The seal on the ballot box from the township of Troy was loosened. This seal consisted of a piece of brown paper pasted over the opening. The clerk testified that the seals were loosened in bringing the box to Pontiac. In addition to this, no seal was placed over the lock.

"(8) The seal on the ballot box from the township of Waterford was broken. The clerk testified that he thought the seal must have been broken after the box was turned over to the board of supervisors. At no time was there any seal placed over the lock.

"(9) There was no lock on the ballot box from Orion, the lid of the box being nailed down. It was sealed on top and canvas nailed over.

"(10) In the city of Pontiac no seal was placed over the locks of any of the ballot boxes from the five wards. Each ballot box had a slot in the top, over which a tin lid could be swung. On all of the boxes this lid was loose. The clerk testified that some of the lids were loose when the boxes were turned over to him, but that the remainder of them were broken loose in bringing the boxes before the committee.

"I am inclosing herewith copy of testimony taken before the board as to the condition of the ballot boxes, and I would like the opinion of your department as to whether or not the board of supervisors should accept

the report of the election inspectors in these cases, or whether or not they should be governed by a recount of the ballots found in each ballot box."

To this the attorney general replied, in substance and effect, that the duties of the board of supervisors in the premises were ministerial and that it seemed they could not properly "consider ballot boxes that have not been preserved and safeguarded in accordance with the specific requirements indicated by the statute."

The writ of certiorari issued out of this court is directed to:

"The board of supervisors of the county of Oakland, Floyd B. Babcock, county clerk of the county of Oakland; Frank L. Doty, prosecuting attorney of the county of Oakland; Grant Fellows, attorney general of the State of Michigan; and the members of the board of supervisors of the county of Oakland."

The return of the county clerk is:

"The execution of the within writ appears by the transcript of record hereto annexed."

There is no return of the board of supervisors, and none of any member of the board. It does not appear that the writ was served upon the board, or upon any of its members.

For plaintiff in certiorari it is contended:

*First.* That the board of supervisors may be authorized to make conclusive and final determination of questions of fact; but questions of law arising upon the face of the record of their proceedings may be examined by the courts, and the action of the board annulled or affirmed as the law may require.

*Second.* That Act No. 327, Public Acts of 1913, is remedial legislation, which should be construed so as to effectuate the purpose of the legislature and advance the remedy.

*Third.* That, so construed, the act means that the board of supervisors has power to make a full investigation and inquiry, not as to the qualifications of those

who voted, but as to the votes actually cast, as shown by the ballots; that it makes no difference whether the ballot boxes were sealed in compliance with law; the appearance and condition of the ballot boxes being circumstances to be considered in determining whether they do or do not contain the ballots actually cast at the election.

*Fourth.* That it affirmatively appears that, exercising the powers which they had under the act, the board found, upon evidence tending to support their finding, that the nay vote had a majority of 22, and this finding was not made the ground of action by the board only because of the erroneous and mistaken opinion of the attorney general. There has been a misconstruction of the act, an error of law, which should be corrected by quashing and holding for naught the preamble and resolution prohibiting the sale of liquors in Oakland county on and after May 1, 1915.

In the brief for defendants in certiorari it is said there are two questions of law to be determined:

*First,* whether this court has jurisdiction to grant the relief prayed for; *second,* whether the board of supervisors was justified in rejecting the recount from 17 precincts and accepting the returns of the inspectors of election for those precincts.

As to the first question raised by defendants, the argument, as it is understood, comes to this: That the statute provisions for recounting and for interference by the circuit court by certiorari together furnish the means—the method—for the ascertainment of the ultimate fact which, when found according to the method —using the means—prescribed, is conclusively found; the statute negatives the idea of judicial review except as expressly permitted. Upon the second point, the contention is that the powers of the board of supervisors under this statute are not other or different from those exercised by other canvassing boards in making a recount of votes, and that the decisions of the court which have been referred to respecting these powers are controlling.

Since suspension of the operation of the general liquor law in a county can be brought about only by affirmative action of the electors, a declaration of such suspension by the board of supervisors, without such affirmative action of the electors, would be void. If it appeared by the record of their proceedings that they had found the necessary affirmative action wanting, and had nevertheless declared the law suspended, the declaration ought to be annulled. For that purpose certiorari would be an appropriate remedy. That in the case supposed this court would have power to issue the writ cannot be doubted.

The court, however, would not annul or set aside the conclusion of any public body, if it appeared that its process was not directed to, and had not been served upon, that body. If we were of opinion that upon the record presented the action complained about in this proceeding—action of the board of supervisors—ought to be quashed, the court would decline to deliver judgment until the supervisors had been given opportunity to make return to the writ.

The premise of the argument and conclusion of plaintiff's counsel, lacking which neither argument nor conclusion can in any case be supported, is that the defendant board found that the majority of votes cast at the election were nay votes. It is the theory of the plaintiff, and the only theory supporting the remedy he has chosen, that the board acted within its powers and arrived at and declared the conclusion just stated. This theory is not sustained by the record.

Assuming that they had the right to determine whether the ballots found in the boxes which were produced were the ballots cast on election day, they did not so determine. On the contrary, if we accept the clear meaning of the committee report, the committee recounted all of the ballots produced. There is nothing in the record to support the conclusion that,

exercising the powers which plaintiff says they possessed, they determined whether any of the ballots were spurious, or determined that all of them were genuine. After concluding the count, they sent for witnesses and examined them. No counting was done thereafter. It is the necessary inference that, instead of determining what votes should be rejected, as they seem to have set out to do, they dismissed the subject by accepting the inspectors' returns from 17 precincts upon advice of the attorney general. It is to be inferred that if they had not followed his advice, and had proceeded according to original intention, they would have determined for themselves and declared in what precincts the votes ought to be recounted. What their conclusion would have been cannot be known. Plaintiff is not complaining that he did not secure a proper recount; that the board ought to have done something which it did not do. If he were so complaining, and dereliction of duty was made out, he could have no remedy in this proceeding.

It is plain, therefore, that the writ must be quashed whether we do or do not agree with plaintiff about the meaning of the law. Both the original and the subsequent canvass of votes, as made, support the preamble and resolution which plaintiff seeks to set aside. In the circumstances disclosed, in view of the fact that in any event the judgment in this proceeding must be the same, we express no opinion concerning the powers of the board of supervisors under the act of 1913.

Writ quashed. No costs.

BROOKE, C. J., and KUHN, STONE, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.

The late Justice McALVAY took no part in this decision.