THE PEOPLE, EX REL., THE ATTORNEY GENERAL, V.
THE VILLAGE OF HIGHLAND PARK.

*Municipal corporations—Alteration of boundaries—Repeal of*
*charter—Vacancy in office—Special election—Notice.*

88  653
90  272

88  653
91  289

88  653
157  398

By an amendment to the charter of the city of Detroit, the greater
portion of the territory of the village of Highland Park was.
attached to said city. The majority of the inhabitants of the
village, including all of its officers except three trustees and.
the street commissioner, lived in the detached territory. After
the act had taken effect *all* of the trustees met and adopted a
resolution to fill the offices made vacant by the act, and
ordered a special election for that purpose, which was held,.
and 41 of the 49 voters residing in the undetached territory
voted at said election, and the officers so elected qualified and
entered upon the discharge of their duties. There was noth-
ing in the act to indicate an intention on the part of the Leg-
islature to repeal the village charter, but, on the contrary, it
expressly contemplated its continuance. And in *quo warranto*
proceedings to settle the question of the continued existence
of the village it is held:

*a*—The charter of the village was not repealed by the
detaching act.

*b*—No repeal can be implied because so few inhabitants and
so small a territory were left in the undetached portion of the
village, there being no constitutional limit to the number of
inhabitants or extent of territory required for the organization
of a village; those questions being entirely within the discre-
tion of the Legislature.

*c*—Legislating a majority of the village officers out of office
did not operate to repeal the charter; nor was the corporation
dissolved by the creation of vacancies in the offices of a
majority of the village council, thereby destroying the power
to call a special election to fill such vacancies, which power
lies dormant in such case until the next regular election, or
until the Legislature provides the machinery for calling an
election.

*d*—The offices of the trustees whose residence was changed
by the detaching act became vacant, and their participa-

tion in the meeting of the council thereafter held was unwarranted, and without legal effect, they being no longer *de facto* officers.

*e*—Without deciding whether the three remaining trustees constituted a quorum at said meeting, inasmuch as the people acted upon the validity of the notice of election given, which was understood by all of the 49 electors, all but eight of whom voted, and no one's rights having been injuriously affected, and no one defrauded of the right to vote, the election must be held valid.

*Quo warranto.* Argued October 28, 1891. Decided December 21, 1891.

Information in the nature of a *quo warranto* to test the right of respondent to exercise the franchises of a municipal corporation. The facts are stated in the opinion.

*A. A. Ellis,* Attorney General (*Frank B. Leland,* of counsel), for relator.

*H. E. Spalding,* for respondent.

GRANT, J. The information in this case was filed by the Attorney General, and charges that the respondent has, since the 13th day of May, 1891, usurped the franchise of being a municipal corporation. To the information the respondent interposed a plea, and to this plea the relator demurred.

The facts necessary to an understanding of the questions involved are these: The respondent was incorporated by Act No. 371, Local Acts of 1889. The village council consisted of six trustees, and the other village officers were the president of the council, clerk, treasurer, assessor, constable, and street commissioner. In 1891 the Legislature passed an act known as "House Bill No. 214," amendatory of the charter of the city of Detroit, and

enlarging its boundaries.[1] By this act the greater part of respondent's territory was detached from it and attached to the city of Detroit. The greater portion of the inhabitants of the village were residents of the detached territory. About 200 inhabitants were still left in the portion not detached, 49 of whom were voters. This act was given immediate effect, and was approved by the Governor May 13. The president, three of the six trustees, the clerk, treasurer, assessor, and constable all reside in the detached territory, leaving only three trustees and the street commissioner residents of the undetached territory. On May 28 the village council met, at which meeting were present all the trustees, those residing in the detached portion as well as those residing in the other portion. They adopted a resolution to fill the offices made vacant by the act detaching the territory, and ordered a special election for the election of new trustees and other officers. This election was called and held. All the voters in the village registered, and 41 of them voted. The officers so elected qualified, and entered upon the discharge of their duties. The undetached territory was, previous to the organization of the village, within the corporate limits of the townships of Hamtramck and Greenfield. The detaching act provided that it should not affect or interfere with the assessment, levy, and collection of taxes for the year 1891 on any of the lands detached from the respondent, or from the other municipalities. It also provided that the board of trustees of the respondent should rearrange the school-districts within its limits.

1. It is first insisted that the detaching act repealed the respondent's charter, and that the territory unde-

---

[1] Act No. 324, Local Acts of 1891.

tached reverted to the townships from which it was taken to organize the village. There is nothing in the act to indicate any intention on the part of the Legislature to repeal its charter. On the contrary, the act expressly contemplates its continuance. If there had been a provision in the body of the act providing for the repeal, it would have been void, because of the failure to express that object in the title. No repeal can be implied because so few inhabitants and so small a territory were left. The Constitution fixes no limit to the number of inhabitants or the extent of territory required for the organization of a village. That is entirely within the discretion of the Legislature. The fact that a majority of the officers are legislated out of office does not operate to repeal the charter. Nor will the occurrence of vacancies in a majority of the governing board of a municipal corporation, thereby destroying the power to call a special election to fill vacancies, operate as a dissolution of the corporation. The power in such case lies dormant until the next regular election, or until the Legislature shall provide the machinery for calling an election. 1 Dill. Mun. Corp. § 166 (110); 15 Amer. & Eng. Enc. Law, 1198; *Philips v. Wickham*, 1 Paige, 597. In this last case the rule is concisely stated as follows:

"If the corporators have the power in themselves to supply the deficiency in their body, their rights are not extinguished, but only dormant."

The power of the respondent in the present case to fill the vacancies by election cannot be doubted.

2. The statute provides that if any officer shall cease to be a resident of the village during his term of office the office shall be thereby vacated. How. Stat. § 2787. It would be doing violence to the natural meaning of language to hold that these offices did not become vacant

the moment that their incumbents ceased to be residents of the village. *People v. Morrell,* 21 Wend. 575. But respondent's counsel urges that these trustees, in their proceedings to call an election, were officers *de facto,* and he cites the following authorities: *Woodside v. Wagg,* 71 Me. 207; *Case v. State,* 69 Ind. 46; *Morton v. Lee,* 28 Kan. 286; *Petersilea v. Stone,* 119 Mass. 467; *Cary v. State,* 76 Ala. 78. But in these cases the acts of the officers were attacked collaterally, and the officers had continued to exercise their functions after the expiration of their terms, without break, or question by the public. They would undoubtedly have been removed upon information filed against them on behalf of the state. The present case, like that of *People v. Morrell, supra,* is a direct proceeding to determine the right to the offices, and the validity of the action of the village council in assuming to perform the functions of office in ordering an election. An officer *de facto* was defined by Lord Ellenborough to be—

"One who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law."

The very action of the council in the present case was predicated upon the existence of vacancies created by the law, and no declaration or resolution by the council was necessary to establish the fact. The participation, therefore, of these removed trustees in the meeting of May 28 was unwarranted, and without any legal effect.

3. The statute provides that a vacancy in the office of president or of any trustee, occurring more than six months before an annual election, shall be filled by a special election. How. Stat. § 2789. So far as this case is concerned, it is unnecessary to determine whether the three remaining trustees constituted a quorum, as respond-

ent contends. The people acted upon the validity of the notice. All the electors understood it, and all but eight voted. No one's rights have been injuriously affected, and no one defrauded of the right to vote. The election in such cases must be held valid.

· Judgment must be entered for the respondent.

The other Justices concurred.