BAUER *v.* TOWNSHIP BOARD OF DENMARK

ELECTIONS—LOCAL OPTION—NOTICE—STATUTES.
  An election to determine upon the adoption of prohibition in
  the county of Tuscola, under 2 Comp. Laws, § 5417, is not invalidated by the publication four days late of the required
  notice of election, when great publicity was given to the
  question, a full vote was cast, and a large majority of all the
  voters in the county voted for prohibition; so that a strict
  compliance with the law could not have changed the result.

Mandamus by Fred Bauer to compel the township board of Denmark to approve certain liquor bonds. Submitted April 30, 1909. (Calendar No. 23,400.) Writ denied July 6, 1909.

*Geer, Williams & Halpin,* for relator.

*T. C. Quinn* (*Pelton & McGee,* of counsel), for respondent.

The relator, a saloon keeper in the township of Denmark, Tuscola county, filed bonds with the respondent for its approval under the general liquor law of the State. The respondent refused to accept the bonds, for the rea-

son that at the last election the question of prohibition under the so-called local-option law was submitted to the electors of the county and adopted. The relator has applied for a writ of mandamus to compel the acceptance of his bonds, claiming that prohibition was not legally adopted in the county. The objection made to the validity of the election is that notices of the election were not published for three successive weeks prior to the election, as required by section 5417, 2 Comp. Laws. The facts established by the petition and answer are as follows:

"The notices were published in the required number of newspapers on March 19th and 26th and on April 2d previous to the election, which occurred on April 5th. They were also duly served upon the township clerks on March 15th, 16th, and 17th. The total number of votes cast upon the question were 7,229, of which 4,406 were for prohibition. It was the largest vote ever cast in the county, and larger than the total vote cast for any officer, State or local, at that election, which was a general one, for State and township officers. Meetings were held in every township for and against the proposition. It was also discussed for weeks before the election in the various newspapers in the county, and in the churches, and the electors were well informed as to the time, place, and manner of the election."

The first publication of notice was four days short of the three weeks required by the statute. Does the failure to publish the first notice three weeks prior to the election invalidate it?

GRANT, J. (*after stating the facts*). No question is or can be raised but that all electors of the county were as well informed of the time, place, and manner of the election, and of the issue involved, as they would have been if the first publication had been four days earlier. Probably no issue before the people was ever more fully discussed and more thoroughly understood by the electors. The answer of the respondent shows that there were but few of the electors of the county who did not vote on the

question, and that those voting in the affirmative constituted a majority of all the qualified voters of the county. The answer of the respondent avers that those voting in the affirmative constituted a majority of all the qualified voters of the county. An examination of previous elections, and of the one now in controversy on State and local offices, establishes beyond doubt the truth of the assertion. It is not questioned in the relator's brief, and, as the case is heard upon pleadings, the answer must be taken as true. The majority in favor of prohibition was 1,583. No fraud is charged.

If such an election is to be held invalid, and the decisive will of the people thwarted by the mistake of the county clerk in failing to publish the notice for the exact time, it must be because the rules of law are so inexorable that they will never tolerate a harmless error or mistake of a ministerial officer. Probably no case can be found in the books which shows a wider publicity, a more thorough and open discussion, and a more complete knowledge of the issue to be voted upon. A canvass was made in every township to secure the requisite number of petitioners, the requisite petitions were obtained, were presented to the board of supervisors. That board, more than five months preceding the election, duly made proclamation that the requisite number of petitions had been filed, and that the proposition would be voted upon at the next general election to be held on April 5th. This proclamation was duly spread upon the public records of the board of supervisors, and the record thereof published in the newspapers of the county. There were but few, if any, electors who did not vote upon the proposition. There is no showing or claim that any voter in the county did not understand the issue and was not afforded an opportunity to vote. A ministerial officer—the county clerk—failed in his duty to publish the first notice within the exact time required by the statute. It must be conceded that a four days' earlier notice would have been of no benefit to the electors. A technical violation on the part of a ministerial officer is

the sole ground for setting aside the deliberate decision of the people of a county, after the fullest and freest discussion possible.

We choose to rest our decision in this case upon the fact that a strict compliance with the law as to notice would have made no difference with the result of the election, inasmuch as a majority of all the voters of the county voted for prohibition. Under such circumstances, omissions of duty by ministerial officers in giving notice will not invalidate the election. *Seymour* v. *City of Tacoma*, 6 Wash. 427 (33 Pac. 1059); *State* v. *Doherty*, 16 Wash. 382 (47 Pac. 958, 58 Am. St. Rep. 39); *Irvin* v. *Gregory*, 86 Ga. 605 (13 S. E. 120). See, also, *People* v. *Village of Highland Park*, 88 Mich. 653 (50 N. W. 660); *Dishon* v. *Smith*, 10 Iowa, 212.

The petition will therefore be dismissed, with costs.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.