PAUL *v.* BENZIE CIRCUIT JUDGE.

1. INTOXICATING LIQUORS—LOCAL OPTION—BOARD OF SUPERVISORS—COUNTIES.

A resolution of the board of supervisors of Benzie county without such preamble as is required by law (section 13, Act No. 207, Pub. Acts 1889; 2 Comp. Laws, § 5424; Act No. 183, Pub. Acts 1899), setting up the fact of election, canvass and result, was a sufficient compliance with the ministerial duty imposed by statute, to prohibit the liquor traffic within Benzie county.

2. SAME—EVIDENCE.

While the defective resolution and preamble, as adopted by the board of supervisors, would not be evidence of the adoption of prohibition under the local-option law, proof of the facts may be made *dehors* the records of the board.

3. SAME—AFFIDAVIT OF PUBLICATION.

Nor is the failure of the printer to file with the clerk of the board an affidavit of publication, as required by the subsequent section, a fatal defect.

OSTRANDER, BLAIR, and STONE, JJ., dissenting.

Mandamus by Marion G. Paul, prosecuting attorney of Benzie county, against Fred S. Lamb, presiding in the stead of the circuit judge for the county of Benzie, to require respondent to vacate an order discharging from custody a prisoner charged with violation of the local-option

statute. Submitted January 16, 1912. (Calendar No. 24,485.) Writ granted March 29, 1912.

*Marion G. Paul, in pro. per.*
*D. G. F. Warner,* for respondent.

MOORE, C. J. One James Culver was complained of, arrested, bound over to the circuit court, and in the circuit court informed against for a violation as of December 15, 1910, of Act No. 207 of the Public Acts of 1889, as amended. On the first day of the January, 1911, term of said court, the said James Culver was arraigned, and before any plea to the information had been asked for or had been entered, and before any other proceedings had been taken in the cause, the circuit judge quashed the information and discharged the respondent; the said judge being of opinion that the "local-option law," so called, was not in force in said county at the time the alleged offense was committed. Thereafter the prosecuting attorney produced the record of the board of supervisors of said county containing the action of the said board of supervisors with respect to the adoption of the said local-option law in said county, and moved the court to set aside the order discharging the said Culver. This the court declined to do, and the prosecuting attorney applied to this court for an order to show cause why a writ of mandamus should not issue requiring the court to vacate the said order. An order to show cause having been granted and an answer to the petition filed, the matter is before the court upon the said petition and answer.

It appears that at a meeting of the board of supervisors of Benzie county, held at the county seat April 12, 1909, the clerk presented the returns from the several townships of the county showing the vote upon the local-option question. The chair appointed a committee on equalization, to which committee, upon motion, the said local-option returns from the several townships were referred for a canvass and report. By the next day, the board being in

session, the committee on equalization made a report, which report, together with the action of the board respecting the same, is as follows:

"To the Hon. Chairman and Members of the Board of Supervisors of Benzie County—

" *Gentlemen:* Your committee, to whom was referred the canvass of the votes upon the question of local-option in Benzie county held at the last annual township election, April 5, 1909, find from the inspectors' statements from the various townships in said county to be as follows, viz., the whole number of votes cast in the affirmative and negative of the proposition whether or not the manufacture of liquor and the liquor traffic should be prohibited within the county, was two thousand five hundred ninety-nine (2,599) and they were given as follows: Nine hundred seventy-seven (977) votes contained the words, 'Should the manufacture of liquor and the liquor traffic be prohibited within the county No.' One thousand six hundred twenty-two (1,622) votes contained the words, 'Should the manufacture of liquor and the liquor traffic be prohibited within the county Yes.' That a majority of six hundred forty-five (645) voted for prohibition within said county of the manufacture of liquors and the liquor traffic, all of which is respectfully submitted.

" Dated Honor this 13th day of April, 1909.
" J. H. WOODWARD.
" HARRY LATHWELL.
" JOHN L. CHANDLER.

TABLE OF VOTES.

| Townships. | Whole Number Votes Cast | Yes. | No. |
|---|---|---|---|
| Almira | 169 | 120 | 45 |
| Benzonia | 315 | 299 | 66 |
| Blaine | 125 | 98 | 27 |
| Colfax | 174 | 111 | 63 |
| Crystal Lake | 466 | 256 | 210 |
| Gilmore | 234 | 135 | 99 |
| Homestead | 375 | 208 | 168 |
| Inland | 163 | 119 | 47 |
| Joyfield | 90 | 71 | 19 |
| Lake | 48 | 23 | 26 |
| Platte | 112 | 67 | 46 |
| Weldon | 348 | 169 | 158 |
| | 2,599 | 1,622 | 977 |

Majority for said proposition 645.

"Moved by Supervisor Worthington, supported by Supervisor Bolton that the board accept and adopt the report of the committee on equalization on the canvass of the local-option vote and also that the board declare the proposition carried in the affirmative.    Carried by the foling 'yea' and 'nay' vote:  Ayes, Supervisors Gray, McDonald, Smeltzer, Bolton, Woodward, Chandler, Rockwell, Case, Lathwell, Batz, Worthington and Stockhill. Nay, None.

"Resolved: That prohibition within the limit of Benzie county of the manufacture and sale, keeping for sale, giving away or furnishing of any vinous, malt, brewed, spirituous or intoxicating liquors or any beverage any part of which is intoxicating, and to prohibit the keeping of any saloon or any place where such liquors are manufactured or sold or stored for sale, given away and furnished. Moved by Woodward, supported by Supervisor Rockwell, that the said resolution be accepted and adopted.    Carried by the following 'yea' and 'nay' vote.    Ayes, Supervisors Gray, McDonald, Smeltzer, Bolton, Woodward, Chandler, Rockwell, Case, Lathwell, Batz, Worthington and Stockhill.    Nay, None.

"Moved by Supervisor Woodward, supported by Supervisor Chandler, that the report, canvass and resolution of said committee on equalization be printed in three newspapers within the said county each week until May 1, 1909, the same to be designated by the clerk of this board as follows:  Thompsonville, Honor and Frankfort. Carried."

It also appears that the matter hereinbefore set out was published in the Thompsonville News, the Benzie County Patriot, and the Benzie County Leader three times in the month of April, 1909; the last issue of two of said papers being upon the 29th of April, 1909, and the last issue of the other paper the 30th day of April, 1909.    The affidavits showing the publications of said notice were made, respectively, September 17, 1910, September 20, 1910, September 19, 1910.    They were thereafter filed by the clerk and were pasted in the record book of the board of supervisors with the other local-option proceedings at the time of filing.

The circuit judge assigned as reasons for quashing the

information and for holding that local option, so called, was not in force in Benzie county:

"(a) That there is no resolution declaring that local-option shall prevail and reign in Benzie county, made or adopted by the board of supervisors of Benzie county as required by Act 207 of the Public Acts of 1889 as amended by Act 183 of the Laws of 1899.

"(b) That the pretended resolution found upon the records that are here in evidence does not follow a preamble, as is required by law.

"(c) That the board of supervisors did not designate any newspaper as required by law in which to publish the resolution, and the fact that the same had been passed and adopted in Benzie county.

"(d) That there is no evidence or showing that any publication was ever made as required by law. Generally, that there is nothing generally or specifically that there was any undertaking to carry out the law."

The local-option law, so called, being Act No. 207 of the Public Acts of 1889 (2 Comp. Laws, §§ 5412 et seq.), is entitled:

"'An act to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, and to prohibit the keeping of any saloon or other place for the manufacture, sale, storing for sale, giving away or furnishing of such liquors or beverages, and to suspend the general laws of the State relative to the taxation and regulation of the manufacture and sale of such liquors in the several counties of this State under certain circumstances; to authorize the qualified electors of the several counties in this State to express their will in regard to such prohibition by an election, and to authorize and empower the board of supervisors of the several counties, after such election, if they shall determine the result to be in favor of such prohibition, to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of any such liquors, or the keeping of a saloon or any other place for the manufacture, sale, storing for sale, giving away or furnishing of the same within their respective counties; and to provide for penalties and rights of action in case of its violation.'"

This act, and the amendments made thereto, provide for submitting to the electors of counties the question whether the manufacture of liquor and the liquor traffic shall be prohibited within the county, for a canvass of the votes upon the question by the board of supervisors, and for a determination by the board of supervisors that the vote of the electors was, or was not, in favor of the proposed prohibition. When the vote favors prohibition and the board has so determined and declared, it was formerly, under section 13 of the act of 1889—

"Lawful for such board of supervisors in any county having so voted in the affirmative of the proposition, * * * and such board of supervisors is hereby authorized and empowered, to order, by a majority vote of all the members elect, the prohibition within the limits of such county of the manufacture, sale," etc., "by resolution, adopted at that same meeting of the board, or at a meeting to which the same may be adjourned, not more than ten days after such canvass."

As amended in 1899, this section of the act provides that, when the board of supervisors shall have determined and declared that a majority of all the legal voters voting on such proposition have voted in the affirmative, "it shall be the duty of such board of supervisors to order the prohibition," etc., by resolution. In respect to the form of the said resolution of the board of supervisors, the law remains as it was in 1899, and to the following effect:

"Such resolution shall be spread in full upon the journal of their proceedings and shall set forth in a preamble the fact that an election submitting the proposition of prohibition as aforesaid was duly held in the county; that sufficient returns and statements have been canvassed by them and the result thereof ascertained; that such result was in the affirmative of such proposition, giving the majority, and that the same has been so determined and declared by them. Such resolution of prohibition shall take full effect in such county on the first day of May next following its adoption, and shall not be subject to repeal by the board of supervisors within two years next thereafter."

It is made the duty of the clerk of the board of supervisors—

"To publish without delay, once in each week until the first day of the next May, in a newspaper published and circulating in such county, to be designated by the board, a copy of the preamble and resolution adopted by the board, as provided by section 13 of this act.   *   *   * Such original affidavit of publication shall be filed with the clerk of the board of supervisors, and he shall spread the same on the records of the board, following the record of the adoption of the resolution of prohibition, and the said clerk shall state next on the record the date when said notice and affidavit of publication was entered for record, and shall then sign the record officially.   The record of such resolution of prohibition and the publication of notice, and all duly certified copies thereof, shall be the evidence of the facts therein stated so far as relates to the territory and municipalities within the limits of said county; and the regularity of any proceedings prior to the adoption of such resolution by the board of supervisors shall not be open to question on the examination or trial of any person for the violation of any of the provisions of section one of this act."   Act No. 183, Pub. Acts 1899, § 14.

It is also provided that the prohibitory provisions of the act shall take effect and have full force within such county of this State on and after the first day of May immediately following the adoption by the board of supervisors of such county of the adoption of such resolution and upon publication of the notice of the adoption of such resolution.   Same act, section 15.

The important question for determination is whether or not the resolution of prohibition set out in the proceedings of the board of supervisors can be held to be a sufficient compliance with the statutory requirements of section 13, *supra*.   An examination of the so-called resolution discloses the fact that it is an excerpt from section 13.   Taken as it is verbatim, from the middle of the section, with neither a proper beginning nor end, it clearly lacks the statute formalities, though it is entirely obvious that it

was intended to be a resolution ordering prohibition within the limits of Benzie county. This criticism is quite apart from, and independent of, the fact that it wholly lacks the preamble required by section 13. The failure to include in the resolution of prohibition the preamble provided for by this section was held by this court to be fatal to the legislation in the case of *People* v. *Murphy,* 93 Mich. 41 (52 N. W. 1042). If, therefore, the situation as it exists now is the same as it was when that opinion was written (1892), we must hold that the learned circuit judge was correct in determining that the proceedings of the board of supervisors were, in this particular, fatally defective.

Section 13 as it was passed in 1889, and as it stood in 1892, provided that, after the board had determined that the affirmative of the proposition had received a majority of all legal votes cast—

"It shall be lawful for such board of supervisors in any county having so voted in the affirmative of the proposition to so prohibit as aforesaid, and such board of supervisors is hereby authorized and empowered, to order, by a majority of all the members elect, the prohibition within the limits of such county   *   *   *   by resolution."

It will be noted that by this language the legislature of the State delegated the board of supervisors the power to legislate upon this question under certain conditions, *i. e.,* when a majority of the electors had voted affirmatively upon the proposition. In the exercise of this power, it is clear that the board was bound strictly to follow the provisions of the statute under which it acted, and that, in effect, is the holding of this court in *People* v. *Murphy, supra.* See, also, *Feek* v. *Bloomingdale Township Board,* 82 Mich. 393 (47 N. W. 37, 10 L. R. A. 69). By the amendment to section 13, contained in Act No. 183, Public Acts 1899, the board of supervisors was shorn of its legislative power. It is there provided that, when the canvass shows that a majority of the voters have voted to prohibit—

"It shall be the duty of such board of supervisors to order prohibition within the limits of such county * * * by resolution," etc.

The section then provides what the resolution shall contain. No discretion is lodged in the board, no legislative power conferred. Plain and simple ministerial duties are imposed.

Can it be said that, having determined and declared the vital fact that a majority had voted in favor of prohibition, the board could, through carelessness, ignorance, or fraud, in the performance of a ministerial act, thwart the clearly expressed will of the people? We think not. Suppose that, after a majority for prohibition had been duly determined and declared, the board of supervisors should refuse to pass the resolution which they are commanded to do by the express terms of the statute. It is clear that mandamus would lie to compel the performance of this purely ministerial act. The fact that, in attempting to perform, the board, through ignorance or inadvertence, failed to follow the provisions of the statute, cannot be permitted to nullify the whole proceeding and invalidate the election. *Madill* v. *Midland Common Council*, 156 Mich. 56 (120 N. W. 355); *Bauer* v. *Township Board of Denmark*, 157 Mich. 395 (122 N. W. 121).

Section 17 provides:

"Upon the trial for any violation of the provisions of section 1 of this act, it shall be competent to introduce the record, or a certified transcript thereof, of the preamble and resolution of the board of supervisors of such county, required by section 13 of this act, and such record and transcript shall be the evidence that the provisions of this act are in full force within such county."

The faulty character of the resolution here under consideration precludes the possibility of its acceptance as evidence of the facts which should have been recited in the preamble. Abundant evidence of those facts exists, however, and we can perceive no reason why proof there-

of may not be made outside the record of the resolution.

The foregoing reasoning applies with equal force to respondent's objection as to the failure to file affidavits of publication. That question was before the court in *Madill* v. *Midland Common Council, supra,* and was determined contrary to his contention.

We conclude, therefore, that though the resolution is faulty and fails to comply with the statute requirements, it nevertheless must be considered as effective to accomplish its purpose, which was simply to record the express will of the people which had already been determined and declared.

The writ of mandamus will issue as prayed.

STEERE, McALVAY, and BROOKE, JJ., concurred with MOORE, C. J.

OSTRANDER, J. (*dissenting*). One James Culver was complained of, arrested, bound over to the circuit court, and in the circuit court informed against for a violation as of December 15, 1910, of Act No. 207 of the Public Acts of 1889, as amended. On the first day of the January, 1911, term of said court, the said James Culver was arraigned, and before any plea to the information had been asked for or had been entered, and before any other proceedings had been taken in the cause, the circuit judge quashed the information and discharged the respondent; the said judge being of opinion that the local-option law, so called, was not in force in said county at the time the alleged offense was committed. Thereafter the prosecuting attorney produced the record of the board of supervisors of said county containing the action of the said board of supervisors with respect to the adoption of the said local-option law in said county, and moved the court to set aside the order discharging the said Culver. This the court declined to do, and the prosecuting attorney applied to this court for an order to show cause why a writ of mandamus should not issue requiring the court to

vacate the said order. An order to show cause having been granted and an answer to the petition filed, the matter is before the court upon the said petition and answer.

It appears that at a meeting of the board of supervisors of Benzie county, held at the county seat April 12, 1909, the clerk presented the returns from the several townships of the county showing the vote upon the local-option question. The chair appointed a committee on equalization, to which committee, upon motion, the said local-option returns from the several townships were referred for a canvass and report. By the next day, the board being in session, the committee on equalization made a report, which report, together with the action of the board respecting the same, is as follows:

"To the Hon. Chairman and Members of the Board of Supervisors of Benzie County—

"*Gentlemen:* Your committee, to whom was referred the canvass of the votes upon the question of local option in Benzie county held at the last annual township election, April 5, 1909, find from the inspectors' statements from the various townships in said county to be as follows, viz., the whole number of votes cast in the affirmative and negative of the proposition whether or not the manufacture of liquor and the liquor traffic should be prohibited within the county, was two thousand five hundred ninety-nine (2,599) and they were given as follows: Nine hundred seventy-seven (977) votes contained the words, 'Should the manufacture of liquor and the liquor traffic be prohibited within the county No.' One thousand six hundred twenty-two (1,622) votes contained the words, 'Should the manufacture of liquor and the liquor traffic be prohibited within the county Yes.' That a majority of six hundred forty-five (645) votes voted for prohibition within said county of the manufacture of liquors and the liquor traffic, all of which is respectfully submitted.

"Dated Honor this 13th day of April, 1909.
              "J. H. WOODWARD.
              "HARRY LATHWELL.
              "JOHN L. CHANDLER.

TABLE OF VOTES.

| Townships. | Whole Number Votes Cast | Yes. | No. |
|---|---|---|---|
| Almira | 169 | 120 | 45 |
| Benzonia | 315 | 299 | 66 |
| Blaine | 125 | 98 | 27 |
| Colfax | 174 | 111 | 63 |
| Crystal Lake | 466 | 256 | 210 |
| Gilmore | 234 | 135 | 99 |
| Homestead | 375 | 208 | 168 |
| Inland | 163 | 119 | 47 |
| Joyfield | 90 | 71 | 19 |
| Lake | 48 | 23 | 26 |
| Platte | 112 | 67 | 46 |
| Weldon | 348 | 69 | 158 |
| | 2,599 | 1,622 | 977 |

Majority for said proposition 645.

"Moved by Supervisor Worthington, supported by Supervisor Bolton that the board accept and adopt the report of the committee on equalization on the canvass of the local-option vote and also that the board declare the proposition carried in the affirmative. Carried by the following 'yea' and 'nay' vote: Ayes, Supervisors Gray, McDonald, Smeltzer, Bolton, Woodward, Chandler, Rockwell, Case, Lathwell, Batz, Worthington and Stockhill. Nay, None.

"Resolved: That prohibition within the limits of Benzie county of the manufacture and sale, keeping for sale, giving away or furnishing of any vinous, malt, brewed, spirituous or intoxicating liquors or any beverage any part of which is intoxicating, and to prohibit the keeping of any saloon or any place where such liquors are manufactured or sold or stored for sale, given away and furnished. Moved by Woodward, supported by Supervisor Rockwell, that the said resolution be accepted and adopted. Carried by the following 'yea' and 'nay' vote. Ayes, Supervisors Gray, McDonald, Smeltzer, Bolton, Woodward, Chandler, Rockwell, Case, Lathwell, Batz, Worthington and Stockhill. Nay, None.

"Moved by Supervisor Woodward, supported by Supervisor Chandler, that the report, canvass and resolution of said committee on equalization be printed in three newspapers within the said county each week until May 1, 1909, the same to be designated by the clerk of this board as follows: Thompsonville, Honor and Frankfort. Carried."

It also appears that the matter hereinbefore set out was published in the Thompsonville News, the Benzie County Patriot, and the Benzie County Leader three times in the month of April, 1909; the last issue of two of said papers being upon the 29th of April, 1909, and the last issue of the other paper the 30th day of April, 1909. The affidavits showing the publications of said notice were made, respectively, September 17, 1910, September 20, 1910, September 19, 1910. They were thereafter filed by the clerk and were pasted in the record book of the board of supervisors with the other local-option proceedings at the time of filing.

The circuit judge assigned as reasons for quashing the information and for holding that local-option, so-called, was not in force in Benzie county:

"(a) That there is no resolution declaring that local-option shall prevail and reign in Benzie county, made or adopted by the board of supervisors of Benzie county as required by Act 207 of the Public Acts of 1889 as amended by Act 183 of the Laws of 1899.

"(b) That the pretended resolution found upon the records that are here in evidence does not follow a preamble, as is required by law.

"(c) That the board of supervisors did not designate any newspaper as required by law in which to publish the resolution, and the fact that the same had been passed and adopted in Benzie county.

"(d) That there is no evidence or showing that any publication was ever made as required by law. Generally, that there is nothing generally or specifically that there was any undertaking to carry out the law."

The local-option law, so-called, being Act No. 207 of the Public Acts of 1889, is entitled:

"An act to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, and to prohibit the keeping of any saloon or other place for the manufacture, sale, storing for sale, giving away or furnishing of such liquors or beverages, and to suspend the general laws of the State relative to the taxation and regulation of the manufacture and sale of such liquors in the

several counties of this State under certain circumstances; to authorize the qualified electors of the several counties in this State to express their will in regard to such prohibition by an election, and to authorize and empower the board of supervisors of the several counties, after such election, if they shall determine the result to be in favor of such prohibition, to prohibit the manufacture, sale, keeping for sale, giving away or furnishing of any such liquors, or the keeping of a saloon or any other place for the manufacture, sale, storing for sale, giving away or furnishing of the same within their respective counties; and to provide for penalties and rights of action in case of its violation."

This act, and the amendments made thereto, provide for submitting to the electors of counties the question whether the manufacture of liquor and the liquor traffic shall be prohibited within the county, for a canvass of the votes upon the question by the board of supervisors, and for a determination by the board of supervisors that the vote of the electors was, or was not, in favor of the proposed prohibition. When the vote favors prohibition and the board has so determined and declared, it was formerly, under section 13 of the act of 1889—

"Lawful for such board of supervisors in any county having so voted in the affirmative of the proposition, * * * and such board of supervisors is hereby authorized and empowered, to order, by a majority vote of all the members elect, the prohibition within the limits of such county of the manufacture, sale," etc., "by resolution, adopted at that same meeting of the board, or at a meeting to which the same may be adjourned, not more than ten days after such canvass."

As amended in 1899, this section of the act provides that, when the board of supervisors shall have determined and declared that a majority of all the legal voters voting on such proposition have voted in the affirmative, "it shall be the duty of such board of supervisors to order the prohibition," etc., by resolution. In respect to the form of the said resolution of the board of supervisors, the law remains as it was in 1899, and to the following effect:

169 MICH.—30.

"Such resolution shall be spread in full upon the journal of their proceedings and shall set forth in a preamble the fact that an election submitting the proposition of prohibition as aforesaid was duly held in the county; that sufficient returns and statements have been canvassed by them and the result thereof ascertained; that such result was in the affirmative of such proposition, giving the majority, and that the same has been so determined and declared by them. Such resolution of prohibition shall take full effect in such county on the first day of May next following its adoption, and shall not be subject to repeal by the board of supervisors within two years next thereafter."

It is made the duty of the clerk of the board of supervisors—

"To publish without delay, once in each week until the first day of the next May, in a newspaper published and circulating in such county, to be designated by the board, a copy of the preamble and resolution adopted by the board, as provided by section 13 of this act.   *   *   * Such original affidavit of publication shall be filed with the clerk of the board of supervisors, and he shall spread the same on the records of the board, following the record of the adoption of the resolution of prohibition, and the said clerk shall state next on the record the date when said notice and affidavit of publication was entered for record, and shall then sign the record officially. The record of such resolution of prohibition and the publication of notice, and all duly certified copies thereof, shall be the evidence of the facts therein stated so far as relates to the territory and municipalities within the limits of said county; and the regularity of any proceedings prior to the adoption of such resolution by the board of supervisors shall not be open to question on the examination or trial of any person for the violation of any of the provisions of section one of this act." Act No. 183, Pub. Acts 1899, § 14.

It is also provided that the prohibitory provisions of the act shall take effect and have full force within such county of this State on and after the first day of May immediately following the adoption by the board of supervisors of such county of such resolution and upon publication of the notice of the adoption of such resolution. Same act, section 15.

It is evident that the resolution of the board of supervisors of Benzie county in question here does not comply with the provisions of the law. There is no preamble; there is no resolution of prohibition. And the record of the board hereinbefore set out is the only evidence presented of the fact that the local-option law, so-called, was in force in Benzie county. In *People* v. *Murphy,* 93 Mich. 41 (52 N. W. 1042), decided in 1892, it is said with respect to a resolution which lacked a preamble:

"Dealing with the resolution as we find it, it was not sufficient evidence to warrant the court in finding" that the act was in force.

It has been suggested that the decision in *People* v. *Murphy* is not controlling because, when the decision was handed down, the law (section 13 of the act of 1889) delegated to the board of supervisors the power to legislate upon the question, and in exercising this delegated legislative power the board was bound to strictly follow the provisions of the statute under which it acted; that it is now the duty of the board of supervisors, after an affirmative vote of the electors, to make and enter in the records the required preamble and resolution, and no discretion is lodged with, or legislative power given to, the board. The effect of the suggestion is that the provisions detailing what actions shall follow an affirmative vote of electors are directory merely. It must be clear, I think, although there is language employed in the opinion in *Feek* v. *Bloomingdale Township Board,* 82 Mich. 415 (47 N. W. 37, 10 L. R. A. 69), to the contrary, that legislative power was not delegated to the board of supervisors by the original act, and that it never had, and has not now, any legislative power in the premises. The law, and all of it, was made by the legislature. Whether it should be effective in a particular locality was left to the judgment of the people of the locality.

" The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law

makes, or intends to make, its own action depend."
*Locke's Appeal,* 72 Pa. 498 (13 Am. Rep. 716).

See, also, *Field* v. *Clark,* 143 U. S. 649 (12 Sup. Ct.
495); *Attorney General* v. *Springwells Township
Board,* 143 Mich. 523, 529 (107 N. W. 87); *King* v. *In-
surance Co.,* 140 Mich. 258, 268 (103 N. W. 616, 6 Am.
& Eng. Ann. Cas. 87). And in *Feek* v. *Bloomingdale
Township Board, supra,* in the headnote it is correctly
stated that, when such order (declaring prohibition in
force) is made, *it is the law* that prohibits, and not the
board of supervisors.

There are two grounds only upon which the decision of
the lower court may be reversed. We must hold either
that the provisions of the law for preserving and declar-
ing the vote, and requiring an affirmative preamble and
resolution, are directory merely, and that the law be-
comes effective when an affirmative vote of electors has
occurred, or else we must find in the record of the board
of supervisors the equivalent, in fact, of what the law
requires. Upon the last proposition it seems clear that
*People* v. *Murphy, supra,* is controlling. It was said in
the opinion in that case:

"It is contended by the prosecution that the court was
authorized to take judicial notice that prohibition was in
force in Van Buren county. Without passing upon the
question of whether it would be competent for the legis-
lature to provide that the resolution or enactment of the
board of supervisors be treated as a general law, of which
courts may take judicial cognizance, it is sufficient to say
that by the very clear provisions of the act in question
the legislature negatived any such purpose, but has pre-
scribed what shall constitute the evidence of the fact that
the provisions of the law are in force in a particular
county."

Upon the first proposition it is to be considered that it is
of the essence of this highly penal statute, indicated clearly
by its terms, that the act shall be in effect in a particular
locality when, and only when, certain things have been
done. A certain record is made conclusive evidence of the

fact that the law is and has been properly put in force. According to what theory may the court declare that other and different evidence than the law calls for shall be sufficient? It would seem that to do so would be to make a law. One prosecuted for disobedience of the law may not, if it has been regularly put in force, inquire into the proceedings for its adoption; but if that which the statute makes conclusive evidence is wanting, why may he not attack the regularity of the proceedings taken to put the law in force? Can anything be clearer than that the legislature intended that no such attack should be permitted, and that whether the law was or was not in force should be determined by the evidence indicated by the statute? This court has not permitted minor deviations from the prescribed statute course or technical failure to comply with the provisions of the law to prevent its enforcement. *Madill* v. *Midland Common Council,* 156 Mich. 56 (120 N. W. 355); *People* v. *Fisch,* 164 Mich. 680 (130 N. W. 341); *Bauer* v. *Township Board of Denmark,* 157 Mich. 395 (122 N. W. 121). But unless we are prepared to say that the law is in force in a county on the first of May succeeding a favorable vote of the electors of the county, and that the statute provisions for the canvass of votes, the preamble, and resolution and the publication of the resolution, are unimportant, the law is not in force in Benzie county.

It is still true, although it is now the duty of the board of supervisors to adopt the necessary preamble and resolution, that the legislature has prescribed what shall be the evidence of the fact that the general liquor law is not, and the local-option law is, in force in a county. Such evidence is not presented in this case, and does not exist. Courts may not hold that legislation is effective in a particular locality upon less evidence than such legislation itself requires.

The writ should be denied, without costs.

BLAIR and STONE, JJ., concurred with OSTRANDER, J. BIRD, J., did not sit.