BALDWIN v. BOARD OF SUPERVISORS OF ALGER COUNTY.

1. MANDAMUS—INTOXICATING LIQUORS—PARTIES—PUBLIC INTEREST
   —ELECTIONS—RECOUNT OF BALLOTS.
   Relators, who were qualified electors of the city in which a
   recount of ballots cast in a local option election was asked
   and made, were proper parties, in the discretion of the cir-
   cuit court, to institute mandamus proceedings to test the

propriety of recounting certain precincts, for the recognized rule against the intervention of private parties to redress grievances that affect the public is not absolute, but discretionary.

2. SAME—PROSECUTING ATTORNEY.

And where the election was close and the interest of the electors general, and intense, the trial court did not err in determining that the prosecuting attorney was not the only proper party to file a petition for mandamus and that private individuals might ask the intervention of the court.

3. SAME—PROPER REMEDY—RECOUNT.

Mandamus is the appropriate remedy of such relators to test the right of the board of supervisors to recount the ballots in boxes that had not been lawfully sealed; the duty of the board in canvassing returns and recounting the votes is ministerial and may be enforced in a proper case by the court.

4. SAME—STATUTORY REQUIREMENTS.

The apparent purpose of Act No. 327, Pub. Acts 1913, providing for a recount of votes by boards of supervisors, was to change the previously existing law, as to the power of the board to ascertain whether or not the statutory requirements relative to sealing and preserving the ballots had been observed.

5. SAME—JUDGMENT—CONCLUSIVENESS.

Where the board in recounting the ballots in certain districts took testimony to ascertain what was the condition of the ballots and whether they had been tampered with, and where no claim was made to the board that they had been tampered with, but objection was raised only to the condition of the ballot boxes, or manner of sealing them, the determination to open the boxes was a decision of fact, and, whether right or wrong, was conclusive upon the court.

Certiorari to Alger; Fead, J.  Submitted October 19, 1915. (Calendar No. 26,945.)  Decided December 21, 1915.

Mandamus by Frederick J. Baldwin and others against the board of supervisors of Alger county to

compel respondents to amend their return of a recount of the ballots cast at a local option election. From an order denying the writ, relators bring certiorari. Affirmed.

*H. B. Freeman (William P. Belden, of counsel), for* relators.

*F. T. McDonald (William F. McKnight, of counsel),* for respondent.

OSTRANDER, J. Although issues of fact were framed and tried by the court, none of the testimony is returned or made part of the record. The plaintiffs in certiorari (relators) adopt the finding made by the circuit judge as "a true, correct, and adequate statement of the facts relative to this controversy."

A local option election was held in Alger county in April, 1915. The board of supervisors canvassed the returns, and from them found that 768 votes had been cast in favor of and 766 votes against prohibition. Petitions for a recount of the votes in several precincts were filed. One asked for a recount of votes in Au Train, Onota, Rock River, Limestone, Mathias, and precinct No. 1 of Munising; another for a recount of votes cast in precinct No. 2 of Munising; another for a recount of votes cast in the city of Munising; another for a recount of votes cast in precinct No. 3 of Munising. Acting as a committee of the whole, the board recounted the votes in these several precincts, and submitted to the board a majority and minority report. A change of 5 votes in favor of nonprohibition was the result of the recount, and the board declared that 764 had been cast in favor of and 766 votes against prohibition.

"It is conceded by the parties that the boxes in Rock River township and the city of Munising were properly sealed, and the recount returns therefrom are

correct. This controversy, therefore, rests upon the recount of Limestone township and precincts No. 2 and 3 of Munising township, and the whole question involved is as to whether the committee was justified in recounting the votes therein in view of the condition of the ballot boxes; there being no testimony here to indicate that the recount committee did not properly count the ballots found in said boxes."

The circuit judge found and stated in detail the condition of the ballot boxes in the precincts in question. Omitting the details, the substance of the finding is that, while the boxes were not sealed in the manner required by the statute, there was no evidence that the ballots found in the boxes and recounted, were not the original ballots cast at the election.

Relators are qualified electors of the city of Munising, signed the original local option petition, and were actively interested in favor of prohibition in the county of Alger. Before asking the circuit court to compel respondents (defendants in certiorari) to reassemble and declare a correct result of the election, they applied to the attorney general to begin the proceeding or to permit the use of his name in that behalf. The request was refused. The prosecuting attorney of the county attended the sessions of the board of supervisors and the recount committee—

"advised them three or more times upon matters connected with the recount, and at the conclusion prepared the resolutions finally adopted by respondents. He states he prepared the resolutions in a clerical capacity, not advising the board as to the action it should take. His attitude was to remain neutral, and he only advised the board upon a direct request from them. Among other things, he advised the committee it might legally open the box from precinct No. 2 if satisfied with the sufficiency of the seal, that it was for the committee to determine whether or not the seal would answer the purpose of an official seal, and also advised it that the box from Limestone township was not a

proper ballot box to be opened.  Mr. Simmons also appeared as attorney of record for said respondents in mandamus proceedings brought by Thomas B. Wyman *et al.* against the respondents herein, in this court, relative to their action in connection with the recount of the ballots cast at said election in Mathias township, which action is still pending, but he took no active part in the case at any time.  He was not requested by relators to permit his name to be used in bringing these proceedings, never refused to permit his name to be used, and testified that he officially held no views adverse to relators' position in this proceeding."

The contentions made and decided in the court below involve the right of relators to institute the proceeding, the conclusiveness of the supervisors' action, the propriety of the remedy sought, and the powers of the board of supervisors in recounting votes.

Upon the facts found by the court, which are controlling, it was properly held that relators might institute the proceeding, and that mandamus was a proper remedy.  In *Ayres* v. *Board of State Auditors,* 42 Mich. 422, 429 (4 N. W. 274, 279), this court said:

"The rule which rejects the intervention of private complainants against public grievances is one of discretion, and not of law.  There are serious objections against allowing mere interlopers to meddle with the affairs of the State, and it is not usually allowed unless under circumstances where the public injury by its refusal will be serious.  In the cases of *People, ex rel. Drake,* v. *Regents of the University,* 4 Mich. 98, and *People, ex rel. Russell,* v. *Inspectors and Agent of the State Prison,* 4 Mich. 187, the court took pains to guard against any decision that would prevent complaint by a private relator, where the public interests require prompt action, and where the public prosecutors will not interfere.  There is, as there shown, more liberality in some States than in others.  But we find no reason to consider the matter as one lying outside of judicial discretion, which is always involved in mandamus cases concerning the relief as well as other questions."

See, also, *Giddings* v. *Secretary of State,* 93 Mich. 1 (52 N. W. 944, 16 L. R. A. 402).

The almost even division of the electors upon the question in issue in the election is manifest from the vote which was cast, "indicating," to use the language of the circuit judge, "that the interest of the electors was general and intense." Under the circumstances disclosed, the discretion of the court was properly exercised in permitting citizens to institute this proceeding.

The relief sought by relators was not merely the setting aside of the determination of the board of supervisors. Affirmative action of the board was sought, including a determination and resolution and record which would have the effect of suspending the operation of the general liquor law of the State in the county of Alger. The duty of the board in canvassing returns and in recounting votes is ministerial. Assuming that the board acted beyond its powers in recounting the ballots in certain precincts, its plain duty was to declare a result other than the one complained of, and to pass and spread upon the record of the proceedings the appropriate resolution. To this end the writ of mandamus is the appropriate, and indeed the only, remedy of persons aggrieved by the unlawful action of the board.

The principal contention of relators is that the board had no power to open and recount the ballots found in a ballot box not closed and sealed in conformity with statutory requirements. This is a contention presented, but held not to be involved, and not determined, in *Alward* v. *Board of Supervisors,* 187 Mich. 573 (153 N. W. 1001).

There is a general law, according to which liquors may be manufactured and sold, in force in every county in the State, unless by the votes of the electors of the county its operation is locally suspended, and such

manufacture and sale is prohibited in the county. The vote being in the affirmative, it is the duty of the board of supervisors to declare that from and after the 1st day of May succeeding the election it shall be unlawful to manufacture or sell liquors in the county. It is the duty of the board of supervisors to canvass the votes and declare the result of the election. In *Paul* v. *Circuit Judge,* 169 Mich. 452 (135 N. W. 283), it was held that the vote was the vital thing; the ministerial duty of the board to pass or not to pass the statutory preamble and resolution and publish the same depending upon the vote. Prior to the year 1913 no recount of such votes was provided for. The conclusion of the board, fraud or apparent mistake being excluded, was final. *Thomas* v. *Abbott,* 105 Mich. 687 (63 N. W. 984); *Haehnle Brewing Co.* v. *Board of Supervisors,* 156 Mich. 493 (121 N. W. 209).

Various provisions of the law are calculated, if obeyed, to preserve ballots cast at an election so that they may be re-examined and recounted. There is in the general election law (1 Comp. Laws, §3725) a provision for a recount of votes. Power is given to cancassing boards, upon proper petitions being filed, to investigate the facts set forth in the petitions, to cause the ballot boxes used in the contested districts to be brought before the board, to make up a committee to recount, to open the ballot boxes and make a recount thereof, and make returns in writing to the canvassing boards. Considering these provisions, it was held that a recount could be had only in cases where the recounting board could find, from an inspection of the ballot box, that the statutory requirements for the preservation of the ballots, as cast, had been observed. *May* v. *Board of Canvassers,* 94 Mich. 505, 511 (54 N. W. 377); *Keith* v. *Wendt,* 144 Mich. 49 (107 N. W. 443); *Ward* v. *Culver,* 144 Mich. 57 (107 N. W. 444). The primary election law (Act No. 4, Extra Session

1907, and Act No. 281, Pub. Acts 1909) provides for a recount of votes. *Ritze* v. *Board of Canvassers,* 172 Mich. 423 (137 N. W. 964). See, also, *Bradley* v. *Board of State Canvassers,* 154 Mich. 274 (117 N. W. 649). In *Keith* v. *Wendt, supra,* it was said:

"We held, in *May* v. *Board of Canvassers of Wayne Co.,* 94 Mich. 511 [54 N. W. 377], that, where it claimed that the ballot box had been tampered with, it was the duty of the board to cause the box to be brought before it and make an investigation. It was also said that such investigation would be confined to an inspection of the box itself. It was not determined in terms that the board must, as a prerequisite to a recount, find that the box had been sealed as the statute requires; but we think such a view was foreshadowed. Further consideration has strengthened our belief that there can be no certainty in proceedings under this statute, if boards are permitted to set up standards of their own in regard to the steps necessary for the preservation of the ballots cast. The test must be this: Have the ballots been preserved as the law directs?"

In *Ritze* v. *Board of Canvassers, supra,* it was said:

"The board of canvassers took the testimony of the primary election inspectors with reference to the condition of the box. They likewise compared the poll list used in said precinct with the enrollment book. They had no authority to do either."

The law of the State being as here indicated, the legislature in 1913 made certain changes in the statutes. By Act No. 352, Pub. Acts 1913, the law which provides for the election of boards of county canvassers and defines their duties was amended so as to provide that any candidate voted for at an election, or any qualified elector voting at the last preceding election, where a constitutional amendment or any other proposition had been voted on, may secure a recount of votes, and for this purpose the board is given power to cause ballot boxes to be brought before it and make

a recount. No power is conferred to subpœna witnesses or to do more than recount the votes. But the returns made by the board upon recount are deemed to be correct, anything in the previous returns from said township, ward, or district to the contrary notwithstanding; and for error apparent upon the face of the returns they may be "examined and corrected upon certiorari to the circuit court of the county." Act No. 320, Pub. Acts 1913, is entitled:

"An act to provide for a recount of votes cast at an election for candidates for office, or proposed amendments to the Constitution or any other question or proposition which are canvassed by the board of State canvassers."

This act empowers the board of State canvassers to recount votes and to require "any inspector of election, county officer, or other person, to appear for any such purpose as may be desired," to demand and cause the ballot boxes "and returns in connection with any such election to be brought before it."

"The returns made by the said board of State canvassers of any recount shall be deemed to be correct, anything in the return of any board of election inspectors, or any county or district canvassing board to the contrary notwithstanding."

Act No. 327, Pub. Acts 1913, is entitled:

"An act to provide for a recount of votes canvassed by boards of supervisors."

It contains three sections. In the first it is provided that, whenever a proposition is submitted to the electors, and the votes cast are canvassed by the board of supervisors of the county, any person voting in the county at the election who considers himself aggrieved "on account of any fraud or mistake in the canvass of the votes by inspectors of election or the returns made by said inspectors," may ask for, and, upon complying with certain conditions, may have, a correction

of the mistakes or frauds complained of. The petition must be in writing, and set forth as near as may be the nature of the mistakes or frauds. By section 2 it is made the duty of the supervisors to appoint a committee from its members—

"to investigate the facts set forth in said petition. For such purpose the said board shall have power to cause the ballot boxes used in such election districts to be brought before said committee. Said committee shall thereupon in some public place where the persons interested, and their counsel, if they so desire, may be present, proceed forthwith to open the ballot boxes from such districts, townships or wards and to make a recount thereof as to said proposition, and for the purpose of recounting the votes upon said question, said board shall have the right to subpœna witnesses, administer oaths, and take all necessary proceedings to insure a correct count of the votes cast upon the proposition and make correct and full return in writing under their hands to said board, showing the full number of votes given, the number of votes in favor of said proposition, and the number of votes against said proposition. As soon as the recount is completed, said board shall at once return the ballots to their respective boxes, carefully fasten and seal the same, and deliver them to the officer having the care and custody thereof. The returns made by the said board of supervisors upon recount shall be deemed to be correct, anything in the previous return from such township, ward or district to the contrary notwithstanding."

By section 3 it is provided that:

"Any person may, for error apparent upon the face of the returns, have the same examined and corrected upon certiorari to the circuit court of said county according to the rules and practices applicable to such rights.   *   *   *   For fraudulent or illegal voting or tampering with the ballot boxes before a recount by the board of supervisors, all legal remedies now existing shall remain in full force."

It is Act No. 327 that we are concerned about, and the others have been referred to for the purpose of

contrasting the provisions for a recount of votes, and to show that, so far as intention can be determined from language, it was the intention of the legislature to give to boards of supervisors in recounting votes canvassed by such boards greater powers than are given to the recounting boards referred to in the other statutes. Some effect must be given to the provision that:

"For the purpose of recounting the votes upon said question, said board shall have the right to subpœna' witnesses, administer oaths, and take all necessary proceedings to insure a correct count of the votes cast upon the proposition."

It may be assumed that the legislature intended a speedy determination of the results of local option elections. It is notorious that ballot boxes used at elections are not secured with their contents, in the statute manner. As has been stated, it was the law when the statute in question was passed that, unless it appeared that the ballots had been so secured, they could not be recounted; that the recounting boards were not authorized to ascertain whether, in fact, the statute precautions for the preservation of ballots having been omitted, the original ballots had been preserved. What possible purpose could be subserved in empowering boards to subpœna witnesses, administer oaths, and take all necessary proceedings to insure a correct count of the votes, if, as theretofore, the evidences of the lack of statutory sealing of the boxes was conclusive of the right to recount the votes? It is plain, in my opinion, that the legislature intended in this act to abolish the test, "Have the ballots been preserved as the law directs?" and to substitute therefor the test one of pure fact, "Have the ballots been, in fact, preserved, notwithstanding the failure to observe the legal requirements for their preservation?" Satisfied by the evidence that the original ballots canvassed by the inspec-

tors of election, and all of them, and no others, are in fact in the box, the board may recount them. Satisfied that they cannot perform the purely ministerial duty of recounting the original ballots in a particular box, they must accept the returns of the election inspectors. This meaning gives effect to the general purpose and all of the provisions of the act. No judicial powers are given to the board. It is not a novel thing to give to boards and commissions power to determine facts and to determine them finally.

In concluding his findings, the learned circuit judge, in agreement with the views I have expressed, said:

"It thus appears that the act in question was intended to and does confer upon the board of supervisors, in recount proceedings, power more like that possessed by courts in *quo warranto* proceedings than that of the usual board of canvassers; that the board is not confined to the determination of questions regarding the formality of sealing the box, but may make an investigation and determination of all questions pertaining to the integrity of the ballots in the precincts for which recount petitions are filed, for the purpose of making a correct count of the votes *cast* in such precincts; that in the decision of all questions of fact in connection with its investigations of fraud or error the determination of the board is final and conclusive, and not subject to review by the courts.

"In the case at bar it appears the board made an inspection of the boxes from Limestone township and precincts Nos. 2 and 3 of Munising township, and took testimony as to the latter. No objection was made to their being opened, except for formal defects as to the condition of the boxes or the manner of sealing. There was no indication or claim made before the board that they had been tampered with in any way. The board determined to and did open the boxes, made the recount, and adopted the result formally. It thereby passed upon the integrity of the ballots and declared them intact and inviolate. This decision, being purely one of fact, whether right or wrong, is conclusive upon this court. (It might be remarked incidentally that there was no evidence on the hearing of the instant

case to show that the ballots had been tampered with or changed since the election.)

"Having authority, under the statute, to pass upon such question and to make the count of the ballots in such boxes, and it not appearing that the recount itself was erroneous (in fact, no question is raised as to the accuracy of the count of the ballots) the determination of the board must stand."

The judgment is affirmed, but without costs.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.